Statement of the case.

---

MARY B. CASSADAY V. C. C. FRANKLAND.

(Case No. 4409.)

1. EQUITY — VENDOR AND VENDEE — SUPERIOR TITLE. — The doctrine that the superior title remains with the vendor of land until the purchase money is paid, recognizes a right in the vendor which is not assignable by transfer of the debt.

2. SAME. — In order that the superior title may remain with the vendor, the ownership of the purchase-money notes must remain with him also; when both the notes, and mortgage taken to secure them cotemporaneously with the execution of the deed, are assigned, neither the legal or equitable title remains in the vendor. It would seem that in such a case the re-assignment to him of the mortgage, and a re-transfer to him of the purchase money notes, would not reinvest him with the superior title.

APPEAL from McLennan. Tried below before the Hon. L. C. Alexander.

This suit was instituted April 23, 1878, by Frankland against Cassaday, for the recovery of two tracts of land in McLennan county, in trespass to try title. The defendant pleaded not guilty, and special pleas which it does not become material to notice. The title of plaintiff and defendant is traced to one R. P. Jones.

Jones being indebted in a large amount to one John Barnes, of London, conveyed to Frankland & Terry cer-

tain lands and other property (amongst which is the land sued for), in trust to sell and pay the debt to Barnes. On the death of Jones, a suit was instituted in Brazoria district court against his representatives and the trustees, and in that suit a decree was rendered reforming the trust deed and directing the execution of the trust according to the terms of the decree. Its provisions are very full in regard to the powers and procedure of the trustees. They are directed to sell the property after proper notice at public sale, and the terms prescribed are the payment of ten per cent. cash by the purchasers and the balance in annual installments at one, two and three years, with interest. It proceeds:

1. The purchasers to execute their promissory notes with good personal security for the respective amounts of said installments, payable to the order of A. Lanfear, at the Commercial & Agricultural Bank at Galveston, and secured by mortgage to be retained on the property purchased.

2. The assignees shall execute deeds to the purchasers, which deeds shall be valid in law to convey to said purchasers all the right, title, interest and claim of the said estate of the said R. P. Jones and of the defendants (these were C. C. Frankland, Clinton Terry, Eleanor P. Frankland and Ambrose Lanfear), in and to the said lands and slaves and other property. But the sales shall be without warranty and the title at the risk of the purchaser, and defects or failure of title shall be no defense or bar to the payment of the notes for the purchase money.

3. It is further stipulated, that at these sales by the trustees Barnes or "his attorney of record herein" may bid for property and direct conveyances to be made, and credit the bids upon plaintiff's debt, and the cash proceeds of sale shall be paid at once to plaintiff or his attorneys.

4. That the plaintiff or his attorneys, etc., shall have the right to elect and take any of the notes and mortgages received, and credit the amount on the plaintiff's debt.

5. The notes and mortgages which he shall not so elect to take and receive shall remain subject to the control of the assignees, who shall collect the same, etc., pay over to said A. Lanfear at Galveston, and the notes and mortgages shall not operate as any credit or payment of the amounts to plaintiff, nor impair his claim or lien, until collection and payment of the proceeds to said A. Lanfear (except in cases of purchase or election to take notes as expressed).

6. That if the trustees fail to make and complete the sale of the property, as specified, "then the power and authority of said assignees to make any further sales or disposition of any property shall cease; and on affidavit made by any one of the attorneys of record of the plaintiff of such failure, the clerk of the court should issue an order of sale, directed to the sheriff of the proper county, commanding him to sell the property."

Under a sale made by the assignees in pursuance of this decree, John A. Wharton purchased the land in controversy on March 6, 1855. Frankland & Terry executed to him a conveyance for the land. In the same document is contained a mortgage from Wharton to A. Lanfear, to secure the notes given for the residue of the purchase money of the land.

The defendant claims through conveyances from the heirs of Wharton.

It appears that John A. Wharton died in 1865. He is represented as being a wealthy man until the close of the war. He was a partner in the practice of the law with Clinton Terry, one of the assignees. Terry died in 1862. John B. Jones, Esq., of Galveston, was the agent and attorney of record of Barnes. He died in 1874.

After the death of Jones, Coryell, a witness for the plaintiff, testified that on examination he found among Jones' papers relating to the Barnes affairs, in 1876, three notes of John A. Wharton, dated about the 6th of March, each for $190, and payable to A. Lanfear. The notes, he says, were burned in a fire at Galveston in June, 1877.

Frankland, the plaintiff, testified by deposition that the assignee "paid over to John B. Jones, the agent and attorney of John Barnes, all cash, and also for collection all the notes received for the lands." An exhibit of sales made by the assignees was produced, to which is appended a "summary statement" as follows:

To 10 per cent. cash payment on ..........................$19,111.47⅛
To amount of plaintiff's receipt for land purchased......... 16,349.05
    Error in plaintiff's receipt for land purchased ........... 10.40⅓
    Amount of plaintiff's receipt for notes or cash from the
        Austin sales.............................. ...... 13,811.66
    Mrs. Frankland's notes cashed......................... 334.82
    John .(name illegible)  "  ........................... 108.00
    Amount of three notes of J. B. Cordova and others, in
        your hands, for which we have no receipt .......... 421.67
      "      "      "      "   .......... 1,421.64
      "      "  John H. Hooker.................. 384.00
      "      "     "     " ................. 103.68
      "      "  John A. Wharton in our hands ... 576.00

                                     35,471.66
Error in favor of trust estate in taking notes............... 73½
(Signed)                FRANKLAND & TERRY, Assignees.

There was conflicting testimony as to whether Wharton and Terry had claims against the trust estate for fees. The "statement" shows that Frankland & Terry retained Wharton's notes. Holmes testified to having found them among the Barnes papers.

*Herring & Kelley*, for appellant.

*Jennings & Dyer*, for appellee.

I. The presumption of payment of the notes of Wharton, given for the land in controversy, is repelled by the

evidence of the situation of the parties, and the other circumstances given in evidence on the trial below, to show that the debt is still due.

II. The presumption of payment does not arise in a case like this by lapse of time, because the legal title remained in the vendors, the assignees, subject to be defeated only by an actual payment of the purchase money.

III. Upon the death of R. P. Jones, the power of the trustees under the assignment was revoked. The assignment was made October 23, 1853. Richard P. Jones died afterwards, and during the same year, and before the execution of the trust. Robertson v. Paul, 16 Tex., 472; Buchanan, Adm'r., et al. v. Monroe et al., 22 Tex., 537; Webb v. Mallard, 27 Tex., 80.

IV. The decree of the district court of Brazoria county, enforcing the trust under the said assignment, vested the power to act in Terry & Frankland, the original assignees, and made their powers joint and several.

V. The deed of Charles C. Frankland and Clinton Terry to John A. Wharton did not divest the legal title of the trustees, nor invest the same in Wharton. Dunlap v. Wright, 11 Tex., 597; Baker v. Ramsey, 27 Tex., 52; Peters v. Clements, 46 Tex., 115; Roosevelt v. Davis, 49 Tex., 463; Burgess v. Millican, 50 Tex., 401.

VI. The notes, being made payable to Ambrose Lanfear, did not divest the title of the trustees to the land, nor invest the same in Lanfear.

VII. The title to all of R. P. Jones' estate was in Charles C. Frankland as executor, and as residuary legatee under the assignment of Jones, and his rights as such are adjudicated by the terms of the decree of the district court of Brazoria county, which declares judgment against him as executor and residuary legatee, placing the legal title in him, and giving to Barnes a lien only on the estate, subject to be enforced by the terms of the said decree. Buchanan v. Moore, 22 Tex., 541.

VIII. The deed to Wharton left the legal title in the assignees, subject to defeasance only on payment of purchase money by him (Wharton), and he having failed to pay the same, and Terry being dead, the title was in the survivor, Charles C. Frankland, the plaintiff below. Dunlap *v.* Wright, 11 Tex., 597; Baker *v.* Ramsey, 27 Tex., 52; Peters *v.* Clements, 46 Tex., 115; Roosevelt *v.* Davis, 49 Tex., 463; Burgess *v.* Millican, 50 Tex., 401; Peter *v.* Beverly, 10 Peters' S. C., pp. 563, 565; Franklin *v.* Osgood, 2 Johns. Ch., p. 19.

IX. There is no legal presumption of payment from lapse of time to vest title in a party who holds under an executory contract like this, and where, in law, the payment in fact of the purchase money alone vests title. Roosevelt *v.* Davis, 49 Tex., 463; Dunlap *v.* Wright, 11 Tex., 597.

QUINAN, J. COM. APP.— The question to be determined in this case is, whether the plaintiff Frankland, upon the state of facts, established his right to recover the land. He claims that, as it is not shown that the purchase money has been paid, the superior title to the land is in him as surviving assignee.

It is certainly well settled in numerous decisions in this state, that in sales of land the superior title remains in the vendor until the purchase money be paid, when the conveyance is executory, or when a mortgage for unpaid purchase money is given simultaneously with the deed, or when an express lien is retained in the deed. Webster *v.* Mann, 52 Tex., 425.

But it is also well settled that this superior title does not remain in the vendor where no express lien has been reserved, nor where a mortgage is taken subsequently to the execution of the deed to secure the payment of the purchase money; nor does it attach to the notes given for it. The holder of the notes is not in any case the holder

of the legal title to the land, unless he is the original vendor or his heir or representative; nor will this superior title follow (Baker *v.* Compton, 52 Tex., 252) the assignment of the mortgage and vest in the assignee.

In Wright *v.* Wooters, 46 Tex., 383, it is said by the present chief justice, "that whilst the doctrine that a mortgage to secure the purchase money, executed by the vendee at the time he receives his conveyance, has the effect to make the contract executory, is well settled by numerous decisions of this court, it is believed that its extension, so as to give like rights to others than the vendor, may lead to confusion, and that such applications of the principle should be made only in cases where the right is clear."

In order that this superior title may remain in the vendor, it would seem essential that the ownership of the purchase money notes should remain with him also. Certainly, if he has parted with the notes and mortgage executed to him for payment of the purchase money, he cannot be said to retain any longer any title to the land. Catlin *v.* Bennett, 47 Tex., 172.

We have found no case in which it has been held that where the purchase money notes are made payable to a third person, and the mortgage to secure them executed to a third person, that the legal title then remains in the vendor.

The vendor reserving a mortgage has the right, upon default of payment, to enter upon the land, if he can do so peaceably, or to sell it, or to sue for it and recover it. Manifestly he can exercise none of these rights where the debt and the mortgage belong to another. And if he cannot exercise them in such case, it is because he does not possess them. He has parted with the land and with the consideration for it, and the title to it. And it would not be reinvested in him by a reassignment to him of the mortgage, or a retransfer to him of the notes.

But in the case before us, there would seem to be no difficulty in coming to the conclusion, under the peculiar circumstances of it, that the plaintiff has not the superior title to the land sued for. We think it evident from the proofs that it was not the intention of the parties that the assignees should retain the legal title until payment of the money. The object of the transaction between Barnes and Jones and his representatives was to provide security for the payment of Barnes' debt,— to put the securities in such a shape that neither Jones or the assignees could divert them to any other use than the payment of the debt, and that the property subjected to it, and all rights of Jones in it, should be closed out once for all by the sale of it. That it should be turned into notes with good personal security and mortgage, not to Jones or his assignees, but to Lanfear. (This was the security bargained for.) The decree limiting the powers of the assignees says "that the assignees shall execute deeds to the purchasers, which deeds shall be valid in law to convey to said purchasers all the right, title, interest and claim of the said estate of the said R. P. Jones and of the defendants," and that these deeds shall be without warranty.

The notes and mortgages were payable to Lanfear; the assignees were authorized indeed to collect them, but they were to pay the proceeds to Lanfear. And at any time Barnes or his attorney had the right to take any of the notes and credit the amount upon his debt. Now the reservation of the legal title in these assignees is inconsistent with the carrying out of these stipulations. If the legal title remained in them, upon default in payment of the notes they could sell the land to another, or take possession of it; but this very clearly they could not do here. The vendor who retains the notes and express lien can sell the land, on default, but by that act he discharges the debt. In this case the mortgage to Lanfear would be unaffected by the act of the assignees; he only could

release it. So, recognizing the legal title in these assignees, and their right to retake the land or sell it, would be to deprive Barnes of the right he contracted for to take upon his debt such notes and mortgages as he might select.

But there is another fact in this connection entitled to consideration in the determination of the controversy. It is seen from the assignment and the decree, that Barnes had no right to the possession of these notes and mortgages unless taking them as a credit upon his debt. The assignees were to retain control over them for collection. But Frankland says he turned them all over to Barnes' attorney for collection. Could Frankland then sell the land? And when the notes passed into Barnes' hands, whether for collection or upon his election to take them as a credit upon his debt, certain it is, that having retained them until they were barred by limitation, and no recovery could be had upon the mortgage or against the securities, Barnes was responsible for the amount, and could be compelled to credit it upon his debt, whether he had elected to take the notes and mortgages or not. So that neither the assignees nor the trust estate has suffered loss. And if Lanfear or Barnes have, it is attributable to their own laches.

These views lead us to the conclusion that the legal title to the land is not in Frankland, and that he cannot recover.

We add, that whilst there is undoubtedly an equity that a vendor selling his land shall not lose it unless it is paid for, that this doctrine of the superior title remaining in him, is one, as said by Judge Gould, not to be extended or enlarged. It should be recognized and enforced as a remedy only in the clearest case, and as a right not assignable. Used as a means for the collection of debt after the lapse of years, on pain of forfeiture perhaps of greater part of the purchase money of the land paid, it may become an engine of intolerable oppression.

There have been two trials, and this is the second appeal in this case.

We are of opinion the judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered December 10, 1881.]