## C. C. FRANKLAND V. MARY B. CASSADAY.

(Case No. 1684.)

1. STARE DECISIS — RES ADJUDICATA.— When, on the second trial of a cause which has once been determined on appeal by a court of last resort, the facts as presented do not materially affect the application of the law as announced, the law as then announced must govern the case, and through all subsequent stages of its progress, and will seldom be reconsidered or revised. Only in exceptional cases will the court deviate from the application of the law as first announced.

2. CHARGE OF COURT.— When the supreme court has decided the legal effect of paper evidences of title to be that the title was thereby vested either in plaintiff or defendant, it is not error for the district court, on another trial of the same cause upon the same evidence, to direct the jury to return a verdict for the particular party in whom the title vested.

3. RES ADJUDICATA.— See opinion for a lengthy review of the decisions of other states regarding the doctrine of *res adjudicata*.

4. CASE REAFFIRMED.— Cassaday *v.* Frankland, 55 Tex., 452, reaffirmed.

ERROR from McLennan. Tried below before the Hon. B. W. Rimes.

This case has been twice before considered on appeal. For a statement of its character, reference is made to 55 Tex., 452. There also will be found the doctrine here held to be *stare decisis*,— that though the superior title remains with the vendor of land until the purchase money is paid, the right in the vendor is not assignable with the debt.

*Chas. A. Jennings* and *Clark & Dyer*, for plaintiff in error.

*Herring & Kelley*, for defendant in error.

WALKER, P. J. COM. APP.— This cause has twice before been considered on appeal to the supreme court; on the first appeal it was submitted to the decision of the commissioners of appeals at the Austin term in 1880, and in 1881, on the appeal of Mrs. Cassaday, it was determined in the supreme court. See Cassaday *v.* Frankland, 55 Tex., 452. The charge given by the court plainly indicates that it was given with direct reference to the decision and the opinion rendered by the supreme court in the case above cited, upon the decisive issues then before the court upon the evidence developed on the trial. It is manifest that the questions to be decided and determined on the trial had been determined on the last appeal in this case, and that that decision was applicable to the evidence before the jury on the last trial, and that the law of the case which was applicable on the former trial was equally so on the last trial.

The record shows that the pleadings had undergone no change; the issues of law and fact were identically the same; and it is stated without contradiction in the brief of counsel for defendant in error, that "on this trial the statement of facts agreed to and approved by the court on the second trial was used instead of depositions and witnesses; and upon comparison will be found to be identical." The charge of the court, too, implies that the case made by the evidence on the last trial was substantially, at least, the same as that upon which the supreme court acted on the second appeal. 55 Tex., *supra.*

The charge given by the court, in effect, was decisive of the case; it directed the jury to find a verdict for the appellee; the giving of which is thus assigned as error by the plaintiff in error:

"The court erred in charging the jury that the legal effect of the deed from Frankland and Terry, trustees, to John A. Wharton, for the land in controversy, dated March 6, 1855, and the mortgage and notes executed on said date by said Wharton to Ambrose Lanfear, passed the title to said lands out of said Frankland and Terry, and out of the estate of said R. P. Jones, and vested the same in John A. Wharton, and that the legal effect of the deeds from the heirs of Wharton down to the defendant, all of which, together with the documentary evidence above mentioned, admitted to be in evidence to the jury, passed the title to said tracts of land, and vested the same in defendant — so held by the supreme court,— and you will, therefore, return a verdict for the defendant."

This assignment correctly embodies the entire charge that was given. The plaintiff in error asked eight several instructions embracing mainly and substantially the legal questions and propositions which were involved in the case on the second appeal; all of which were refused. The refusal of the court to give which is assigned as error.

The defendant in error, as a full answer to each and every proposition of the plaintiff in error, submits the counter proposition that "*stare decisis* can be successfully invoked and confidently relied upon, when, upon the same statement of facts, the same decision has been twice made by a court of last resort," referring to the decision made by the commission of appeals, and Mary B. Cassaday *v.* C. C. Frankland, 55 Tex., 452, decided by the supreme court, opinion by Judge Quinan of the commission of appeals, adopted by the supreme court; and citing as authority Wells on Res Adjudicata and Stare Decisis, secs. 613, 614 *et seq.;* Burns *v.* Ledbetter, 56 Tex., 283.

The statement of facts contained in the record before us contains

nothing to rebut the inference that the evidence was substantially the same as that which the statement of the case and the opinion imports, contained in the report of this case in 55 Texas. The opinion of Judge Quinan, read in connection with the reporter's statement of the same, would be as applicable to the evidence in this record as it was to the case when decided by that opinion; and we might well infer that the facts developed on both trials were substantially the same, and that that decision embraced all the material questions presented herein under the evidence. The court below, it appears from the charge, so regarded it. That court had before it the entire record of the proceedings had in the cause at every preceding trial, together with the mandates and opinions delivered by the appellate tribunals which had acted on the preceding appeals, and with that data before the court, it must be presumed, in the absence of anything to countervail the conclusion, that the interpretation of the judge in respect to what the supreme court had held upon the case as developed to the court and jury under the evidence, was warranted by a comparison by himself of the evidence in both trials.

From these considerations, we think, it may be assumed that the facts of the case were substantially the same on both trials, and if they were otherwise, it was incumbent on the plaintiff in error to have caused the record, in some appropriate manner, to show wherein the difference consisted, as for instance in the statement of facts, by bill of exception, or in the motion for new trial. There is nothing in the record to negative the presumption that under the same issues on two several trials that the evidence would be substantially the same, unless circumstances existed which would rebut such an inference, especially where the court, having the whole proceedings before it, acted upon that hypothesis, without question being made as to the correctness of such an assumption.

Recurring to the rule, *stare decisis*, relied on by the defendant in error, the general rule is thus stated by Wells in his treatise on Res Adjudicata and Stare Decisis, sec. 613: "It is a well settled principle that the questions of law decided on appeal to a court of ultimate resort must govern the case in the same court, and the trial court, through all subsequent stages of the proceedings, and will seldom be reconsidered or reversed, even if they appear to be erroneous."

The application of this rule, however, contemplates that the facts on the second appeal shall be substantially the same, or rather, perhaps, that they shall not be such as to affect materially the legal questions involved under the first appeal.

The general rule as quoted from Wells on Res Adjudicata and Stare Decisis, it will be noticed, qualifies the universality of its application by the statement that the court of ultimate resort " will *seldom* " reconsider or reverse its previous decision in the same cause, even when it appears to the court to have been erroneously decided; thus stated, it would seem that the rule which has been generally accepted as unquestionable, goes at least to the extent that only in exceptional cases will the court exercise its discretion in deviating from its ordinary application.

The rule under consideration is laid down and followed, it would seem, in some of the states without any qualification whatever, and even inexorably applied in cases in which the former decision is admitted to have been " in abrogation of one of the plainest principles of law." See Wells on Res. Adjudicata, sec. 621, citing and quoting from Dewey *v.* Gray, 2 Cal., 377. The ground stated by the judge delivering the opinion being that " The decision having been made in this case, it has become the law of the case, and is not now the subject of revision."

In Vermont the rule is recognized and followed with undeviating uniformity in its application to all appeals which come within it. In the case of Stacy *v.* R. R., 32 Vt., 552, which was presented with a different statement of facts, but, as the court held, without any substantial difference, the opinion said: " The rule has been long established in this state, often declared from the bench, and, we believe, uniformly adhered to, that in the same cause this court will not reverse or revise their former decisions. . . . And whatever views the different members of this court may entertain as to the soundness of the former decision, we all agree that the doctrine there enunciated is to be regarded as the law of the case." The rule, as stated in Phelan *v.* San Francisco, 20 Cal., 45, is that " A previous ruling by the appellate court upon a point distinctly made may be only authority in other cases, to be followed or affirmed, or to be modified or overruled, according to its intrinsic merits, but in the case in which it is made, it is more than authority; it is a final adjudication from the consequences of which the court cannot depart, nor the parties relieve themselves." See Wells on Res Adj., sec. 613.

In Burns *v.* Ledbetter, 56 Tex., 282, Chief Justice Gould, referring to the rule under consideration, points to cases where our supreme court " has deemed itself justified in departing from the law as decided on the former appeal; citing Layton *v.* Hall, 25 Tex., 212; Reeves *v.* Petty, 44 Tex., 249; Rogers *v.* Ragland, 42 Tex., 422;

White, Smith & Baldwin v. Downs, 40 Tex., 225.   These cases show, as the chief justice admits, that the rule has not been deemed inflexible in this state; he proceeds to express his individual opinion, predicated upon a considerable array of authorities from many of the states, "that the rule itself is well established, is founded on the policy of preventing useless litigation, and that it should not be departed from even for the purpose of reinvestigating the correctness of the former decision, save for urgent reasons."

The case of The State v. Wygall, unreported (see 2 Tex. Law Review, 138), being before the supreme court on a second appeal, Chief Justice Willie said: "It is only in exceptional cases that we would overrule decisions previously made in the same cause on a former appeal."

The rule thus suggested by Chief Justice Willie, according in its spirit as it does with that which Chief Justice Gould presents as being the proper one, may well be applied in this case.

What is it contained in this record that characterizes the merits of the appeal as "*exceptional*," so as to induce a departure from the ordinary operation of the rule?   What "*urgent reasons*" are suggested in the elaborate and able brief of counsel for the plaintiff in error, or by the record, to justify such departure for the purpose of reinvestigating the correctness of the former decision?   We are unable to perceive either the one or the other.

It is not maintained that the opinion of the supreme court has applied any legal proposition contained in it that is incorrect, or that is even doubtful, or that is even questionable, as abstract law. Its conclusiveness, if questionable, must therefore depend upon the application of the law there propounded to the facts of the case. The gist of the argument involved in the numerous assignments of error, and the still more numerous propositions under them, is that the evidence shows that the construction given in the opinion of Judge Quinan (55 Tex.) to such a state of facts as are shown in the statement of facts in this case is unwarranted in law; that the opinion would be applicable to a different state of facts than are here shown, but not to these.   If such is not the logical view of the argument of the brief, then the alternative proposition must be that the plaintiff in error maintains that the decision of the supreme court, if based upon the same facts substantially as are now presented to it, was erroneous in respect to some fact or facts found or determined by the court as the basis of its opinion, or that the law as propounded was not good law, and that the decision ought therefore to be corrected.

The report of the case (55 Tex., 452) plainly evinces that the question then, as now, decisive of its merits was the determination of the question whether, under the deed of assignment, the decree of court, the sale of the land under it to John A. Wharton, and the corresponding execution of the deed to Wharton, and of purchase notes, and mortgages payable to and made to Lanfear, had the effect to leave remaining in the estate of Jones, the superior title to the land.

The statement of the case made by the reporter shows these facts as being those upon which the supreme court was required to decide in determining that question. The clear, concise and logical opinion of Judge Quinan leaves no room for doubting that in passing upon that question the relation and effect of these several instruments to the subject and the legal consequence under the deed of assignment and decree of court of the purchase money notes being made payable to Lanfear, and the mortgages given to him to secure their payment, in determining whether the estate of Jones still retained the superior title, or whether it was lost, were distinctly the subjects of judicial consideration and authoritative determination.

The brief of counsel for plaintiff in error presents eight propositions under the assignment of error which has been stated. These propositions, in the main, question the correctness of the decision of the supreme court upon the ground that on several points which the brief attributes to the opinion, that the evidence either did not warrant the assumption of a given fact or facts, or else that the conclusion of law or fact placed by the court upon the evidence, was not supported by the evidence, or was unwarranted by it.

On most, if not all, of such propositions, we conceive that the points thus made are not relevant to the merits of the case as the same was viewed by the learned judge who pronounced the opinion. The questions made in the propositions alluded to, we think, with due consideration to the views of the able counsel, indicate a misconception of the real grounds on which the opinion was rested, holding that the legal title to the land was not in Frankland.

The introductory portion of the opinion is devoted, it is true, to maintaining the proposition that where the vendor parts with the notes and security given for the purchase money he cannot be said to retain any longer any title to the land; but the opinion does not rest the reversal of the judgment on the ground that the purchase money notes, being made payable to Lanfear, and the mortgages given to secure them being made to him, constituted that transaction such a dealing with a third person as brought the question of

title under the operation of the principle just stated, as laid down in Catlin v. Bennatt, 47 Tex., 172.

The opinion, after stating the rule referred to, proceeded to show that the true construction of the deed of assignment, considered in connection with the transactions between Jones, the grantor, and Barnes, the beneficiary, the decree of the court construing and giving effect to them, showed a state of facts which were, in legal consequence, the same as would have ensued in the case of a vendor of land transferring his purchase money notes, so far as concerns the question as to whether the legal title abided with Jones' estate, or with the assignees or not.

The opinion says: "But in the case before us there would seem to be no difficulty in coming to the conclusion, under the peculiar circumstances of it, that the plaintiff has not the superior title to the land sued for. We think it was evident from the proofs that it was not the intention of the parties that the assignees should retain the legal title until payment of the money." The reasoning of the court which follows this construction and conclusion, illustrates clearly enough, that the view which the court took of the legal question was not made to depend on what was the effect of the mere taking the notes and mortgages in the name of Lanfear, and of his right to receive the proceeds, but that the entire transaction between Jones and Barnes manifested the intention to place the evidences of debt and the security therefor arising from the sales of land in a condition and position wholly incompatible with the reservation of any title to the land in the grantor of the deed of assignment, or in the assignees, and that from that consideration the superior title could not exist in Frankland.

Under this interpretation of the opinion we do not deem it necessary to investigate or determine whether the decision of the court was or was not maintainable on the series of hypothetical propositions made in the brief, because we conceive that the opinion itself does not discuss nor determine nor base the decision of the court upon the theories which are thus imputed to it.

In addition to the ground of the opinion which we have mentioned, consideration was given to the fact that Frankland said in his testimony that he placed the purchase money notes given for the land in the hands of Barnes' attorney for collection. We do not deem it necessary to discuss this feature of the opinion, presented, as it seems to have been, as an additional ground for the deduction that that act of election indicated a relinquishment of claim of title to the land on the part of the assignees.

Under the views we have expressed concerning the former disposition of this case, we think that if the rule invoked by the defendant in error has any place in our jurisprudence for the government of the court, that this appeal presents a fit case for its application. The main and essential merits of the case were as fully and fairly presented for the determination of the supreme court formerly as they are on this appeal, and they were passed upon and decided. There is not any reason for supposing that the law of the case was not applied to the evidence; or that there was any departure from well established principles of law. There is nothing in the decision referred to, to more specially challenge its correctness in every respect, than might well be suggested in the ordinary course of judicial decisions of the supreme court. There appears nothing "exceptional," therefore, in the case, nor does any "urgent reason" obtrude itself in considering the case as formerly decided, to require a revision as to its correctness. We might even add, if it were appropriate in this relation to do so, that the decision seems to be very clearly right.

The court did not err "in its charge instructing the jury to find for the defendant without submitting the issues of fact under the evidence to be found by the jury, the court assuming the facts of a former trial as stated by the supreme court to be the facts proven on this trial." We have already sufficiently indicated the reason why there was no such error, in the fact that on the trial in question there was before the court, as a part of the case, all former proceedings in both courts essential to justify the course which the court pursued. The same answer applies to the error assigned "that the court erred in assuming the facts proven on a former trial to be the facts proven on this trial.".

It is not necessary to consider further the assigned errors, as our determination that there was no error in the charge given by the court is decisive of the merits of this appeal.

The judgment, therefore, ought to be affirmed.

AFFIRMED.

[Opinion adopted November 17, 1884.]

Chief Justice WILLIE not sitting.