**C. C. MAY and wife, Sophie May, Appellants,**

**v.**

**CITIES SERVICE OIL COMPANY et al., Appellees.**

**No. 7070.**

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

Wilson, Kendall, Koch & Randle, Austin, for appellants.

Glusing & Sharpe, Kingsville, Cox, Smith & Smith, San Antonio, J. W. Cooper, Keys, Russell, Watson & Seaman, Wm. H. Bloch, Corpus Christi, Rex H. White, Jr., Asst. Atty. Gen., Austin, for appellees.

KEITH, Justice.

The lease involved in this case is the identical lease construed in Guaranty Nat. Bank & Trust of Corpus Christi v. May, 395 S.W.2d 80 (Waco Tex.Civ.App., 1965, error ref. n. r. e.), and the same parties are involved, although they are re-aligned. A reference to the plat found on page 81 of the reported opinion will be helpful to a better understanding of the factual basis of the respective claims. It is unnecessary to repeat the facts stated in the prior opinion, such being incorporated herein by reference. Upon the plat found in the reported opinion, May #1 was located on Tract #3 while the new well, which we will designate as May #2, was located on Tract #1 of the same plat. The operator assigned acreage (241.54 acres) to the production allowable unit under May #2 by assigning Tracts Nos. 1, 2, and 3, together with the west 48.6 acres of Tract #4 (the unshaded area thereof), and some five acres of land just to the south of Tract #1 (which is not of concern in this cause). Tract #5, in which Hampton owned a ⅟16 non-participating royalty interest, was *not* assigned to May #2.

The first production from May #1 was obtained in December of 1963, and May filed his first suit in 1964. This litigation was not finally determined until May 25, 1966, when the Supreme Court refused the application for the writ of error with the notation: "No Reversible Error." In the meantime, the production from the Morgan Sand in May #1 (one of three producing sands) had declined from a peak in August of 1964 of 8,950 MCF per month to 1,000 MCF produced in February of 1965. During this time, the lessees drilled May #2 on Tract #1 of the reported plat, the entire royalty under Tract #1 being owned by May. This well was completed in January of 1965, with production during the month of February of 1965 amounting to 47,989 MCF, increasing to 86,704 MCF in March of 1965, nearly ten times the maximum production ever achieved from the Morgan Sand found in May #1. Production from the Morgan Sand in May #1 ceased in April, 1965. The Morgan Sand was the only productive sand common to the two wells. Under the judgment in *Guaranty*, Koch and May divided the ⅛th royalty equally to the exclusion of the Brookshire interests.

On the very day the Supreme Court denied review of *Guaranty*, the Koch interests (hereinafter referred to simply as "Koch"), filed for record an instrument which recited that the lessees having completed May #2 as a producer of gas and gas-condensate or distillate from the Morgan Sand "have created or are in the process of creating around said well a unit [of 241.54 acres] for the operation of said well and the production * * * of gas and gas-condensate or distillate from the Morgan Sand, * * *" then proceeded to adopt such unit through the use of these words:

"* * * do hereby ratify and adopt said unit and agree that our royalty interest in and to the gas and gas-condensate or distillate in and which may be produced from the said Morgan Sand in and under the east half of said Lot 1 shall be

committed to said unit on the same basis and to the same extent as are the other royalty interests in said Morgan Sand in and under said 241.54 acre tract."

This instrument executed by Koch will be referred to hereinafter as the Koch ratification. Prior to the filing of the Koch ratification, the lessee had paid the entire royalty to May, who owned all of the royalty under the well site, Tract #1. However, effective June 1, 1966, the lessee treated the unit as having been ratified by all of the non-participating royalty owners, causing a substantial decrease in May's income therefrom.

May then brought this suit against all of the other non-participating royalty owners, the operator and the owners of the working interest under the lease to declare: (a) Koch's ratification invalid and void ab initio, and (b) that the lessee had not created the pooling unit for May #2 in good faith. He sought, inferentially, to exclude Brookshire therefrom because of the prior decision in *Guaranty*, and to exclude Koch under the theory of estoppel.

Trial to the court resulted in the entry of judgment declaring the Koch ratification void but upholding the operator's designation of the acreage assigned to May #2, thus permitting the Brookshire interests to participate in the royalty from the well located upon land in which May owned all of the royalty.

May has appealed, claiming that, since (as he contends) the trial court properly

held the Koch ratification ineffective, it was error not to declare invalid the pooled unit containing the Koch acreage. A further contention is made that the lessee did not act in good faith in designating the May #2 Morgan Sand Gas Unit. Koch has appealed and complains that the court was in error in holding that, since he had once refused to subject his interest to a pooling agreement, he was thereafter forbidden and estopped from joining in any other pooling agreement. The lessees, the operator, and the other owners of the royalty interests make common cause with Koch, although Koch leaves them to fend for themselves. Brookshire, joined by the Attorney General acting under Article 4412a, Vernon's Ann.Civ.St., is content to be an appellee with a participation in the production from May #2, although still complaining bitterly of the result of the prior litigation. The two appeals, having been consolidated, will be disposed of as they were submitted.

Regardless of the justification of the criticism of *Guaranty*, or lack thereof, we are bound under the rule of res judicata to accept it as binding upon the parties and this court for all purposes in this litigation.[1]

As was correctly pointed out on the prior appeal in *Guaranty*, Koch had not then ratified the 1958 lease which May had executed and delivered. It was to his interest, *at that time*, to refrain from ratification, since May #1 was bottomed upon the only acreage in which he owned *any*

1. The decision in *Guaranty*, accepted as binding herein under the doctrine of res judicata as to May #1, has, nevertheless, been the subject of criticism. Judge Goldberg in Howell v. Union Producing Co., 392 F.2d 95, 112 (5th Cir., 1968) says that "The 100% joinder rule applied in the *Guaranty* opinion is a misapplication of Texas' cross-conveyancing rationale for community allocation * * *." and, in effect, declined to follow the decision.

The second or estoppel theory in *Guaranty* has been cited as a possible justification for the refusal of our Supreme Court to review *Guaranty*. See Flittie,

"Oil & Gas, 1965–66 Annual Survey of Texas Law", 21 S.W.Law Jrl. 29, 35 (1967).

*Guaranty*, however, was cited with approval in the majority opinion in *Rittersbacher*, infra, with which we agree as to the statement of the Supreme Court. (424 S.W.2d at 215.)

No party has any point *requiring* us to re-examine the decision in *Guaranty*, and we accept it as controlling the controversy there decided. We do not, however, extend its applicability beyond the narrow limits to which it is entitled in this litigation.

royalty interest. This position he maintained until it became apparent that (a) the opinion of the Waco Court would not be disturbed, and (b) the Morgan Sand underlying May #2 was producing at a prolific rate, while it had played out under May #1. *At that time,* it was to his interest to ratify the unit created by lessee, insofar as the Morgan Sand was concerned, while attempting to retain the right to refuse to ratify if production was ever had from any *other* sand found in a well bottomed on his royalty acreage.[2]

■ May's contention that the Koch ratification of 1966 was void and ineffective, a position sustained by the trial court, being used as a major premise for the point challenging the invalidity of the pooled unit, we first consider that facet of the matter. The *entire* argument found in Koch's brief, a paragon of simplicity, is reproduced in the footnote[3] and points up Koch's contention that because he had once refused to subject his interest to a pooling agreement, the trial court erred in holding that he was thereafter forbidden and estopped from joining in any pool created thereafter.

May, in exercising the executive rights, had delivered a lease which authorized the lessee "at its election [to] exercise its pooling option after commencing operations for or completing an oil or gas well on the leased premises. * * *" However, the rights of the non-participating royalty owners such as Koch were not affected thereby until such royalty owners exercised their option to ratify or repudiate the action by the lessee in creating a pooled unit. *Guaranty,* supra, and *Rittersbacher,*

supra. While it was to his financial interest so to do, Koch declined to ratify the pooling provision of the lease, thereby increasing his income from May #1, but also allowing him to await the outcome of *Guaranty.*

May now contends that, since Koch took that position in the prior litigation (indeed in so doing Koch was aligned with May, who took a similar position), Koch cannot now ratify the unit created by the lessee in May #2. This position, May insists, flows from the principle that Koch is estopped from taking a position in this litigation inconsistent with that he took when the two were waging a common fight against the Brookshire interests in the prior suit.

We are not confronted with a situation in which Brookshire is urging a plea of estoppel against Koch based upon *Koch's* position in *Guaranty.* That contention is in no manner presented by any of the parties. Rather, it is May who contends that Koch is estopped because Koch did not oppose *May's* position in *Guaranty,* which May prosecuted successfully against Brookshire.

In urging this plea of estoppel against Koch, May brings forward as his sole authority Theriot v. Smith, 263 S.W.2d 181 (Waco Tex.Civ.App., 1953, error dism.), a case originating in a county court at law, which involved a plea of equitable estoppel. There it was said:

"Equitable Estoppel is the effect of the voluntary conduct of a person whereby he is precluded from asserting rights against another relying on such conduct; and it arises where a person by his acts,

2. The question of the validity of the "retained rights" of Koch, if any there be, is not before us and we express no opinion upon the question of whether or not Koch could or could not take a position in future litigation that he has not bound *all* producing sands ever discovered in a well bottomed upon the surface in which he is the owner of a non-participating royalty interest covered by the May lease.

3. "The trial court's judgment is in direct conflict with the rule announced by the Texas Supreme Court in Montgomery v. Rittersbacher, 424 SW2d 210, wherein it was held that the owner of a non-participating royalty interest (at p. 215) 'has the option to ratify or repudiate a lease containing provisions which as to his interest the holder of the executive rights had no authority to insert in a lease.' "

representations, or even silence, induces another to believe that certain facts exist, or is led to change his position for the worse. * * *." (263 S.W.2d at 183.)

May's reliance upon this quotation from *Theriot* is misplaced. First, it should be remembered that his position in the first suit was not inconsistent with that of Koch, in fact the two of them made a common and successful fight against Brookshire; secondly, May did not rely upon anything which Koch did in the first suit for it was he, May, who had originally executed the lease containing the pooling provision. May did not change his position because of the position which Koch took in the original suit with Brookshire. Koch was simply receiving the benefit of the legal theory then urged by May in the litigation to the detriment of Brookshire.

Koch had a legal right to refrain from ratifying the pooling provision, a right which was upheld in *Guaranty.* Indeed, the result in that suit would not have been different had Koch ratified the lease. This is so because the Hampton interests, in their ratification, had specifically provided that their royalty interest was not pooled or unitized. The Hampton interests, as we noted, are not in the May #2 unit. May was neither misled nor did he change his position because of any action or non-action on the part of Koch in the prior case.

But, May brings forward in support of his theory of equitable estoppel the decision of Nugent v. Freeman, 306 S.W.2d 167 (Eastland Tex.Civ.App., 1957, error ref. n. r. e.). Actually, the two-year delay of the Nugents in seeking any relief, and filing suit only after the leasehold of Freeman had been fully developed in the cited case, amounted to a finding of laches, rather than estoppel. The case is neither apt nor persuasive.

Although May relies upon estoppel to prevent Koch from participating in the royalty under May #2, based solely upon Koch's position in the prior case, he fails to bring himself within the protection of the doctrine. We quote from Kuehne v. Denson, 148 Tex. 54, 219 S.W.2d 1006, 1009 (1949):

> " 'The purpose of estoppels is to prevent inconsistency and fraud resulting in injustice.' 31 C.J.S. Estoppel, § 1, page 192. Although the case involves only estoppel, in pais, Davis, Receiver, v. Allison, 109 Tex. 440, 211 S.W. 980, 984, applies as well to all other estoppels when it declares: 'Estoppel is a doctrine for the prevention of injustice. It is for the protection of those who have been misled by that which upon its face was fair, and whose character as represented parties to the deception will not, in the interest of justice, be heard to deny. *But one entitled to its protection must have been misled.*' " (Emphasis ours.)

It was said in Concord Oil Co. v. Alco Oil and Gas Corp., 387 S.W.2d 635, 639 (Tex.Sup., 1965):

> "An essential element of estoppel is that the party relying on an estoppel must have acted on it to his prejudice.
>
> *       *       *       *       *       *
>
> " 'In order for an estoppel to exist, it devolves upon the party seeking the advantage thereof to establish that he has been misled to his injury. * * *' "

In Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952), the court quoted at length from 31 C.J.S. Estoppel § 67, p. 402, concluding the quotation with this phrase: "and the party to whom it [the false representation or concealment of material facts] was made must have relied on or acted on it to his prejudice." Indeed, it is veritable Hornbook law that before one can invoke the doctrine of estoppel he must show that he relied upon the representation of the opposite party to his detriment. Such is simply not our case here. It was May who brought the original suit against Brookshire, seeking to preclude Brookshire from participating in the royalty from May #1 upon the ground that Brookshire was estopped by his acceptance of royalties over a long period of time from

production in the Yeary Unit. Koch did not mislead May, nor did any act or representation of Koch cause May to change his position.[4]

■ The decision in the prior case of *Guaranty*, supra, was that the lessee and operator could not pool Koch's non-participating royalty in the unit, insofar as it related to May #1, until such time as Koch took some affirmative act to exercise the option recognized in *Rittersbacher*, supra. Until Koch ratified, May collected all of the royalty from the production from May #2. The penalty, if one is to be assessed against Koch for his delay in ratifying the new unit is not to bar him forever from exercising his option, but to deprive him of any benefits therefrom until such time as he takes steps to exercise the option. *Rittersbacher*, supra, 424 S.W.2d at p. 215. Once Koch ratified the new pool, he became entitled to his pro-rata payments for future but not past production therefrom.

The judgment of the court below, finding that the plaintiffs, May, should have judgment for cancellation of the Koch ratification of the new pool, insofar as it pertained to the Morgan Sand in May #2, decreed that Koch "are estopped and precluded from executing and giving effect" to such instrument and "such instrument is hereby cancelled and shall be of no force or effect ab initio." It was further decreed that Koch "shall not participate in nor receive royalties on production" from the Morgan Sand in May #2. All other relief sought by any of the parties was denied and refused. The "other relief" sought by May was a declaration that the "Designation of May 2–A Morgan Sand Gas Unit, May Field, Kleberg County, Texas" filed by Cities Service and the other owners of the working interest "was created without lawful authority to create such pooled unit; and that the [said] Defendants have wholly failed to exercise or act in good faith in the exercise of pooling authority conferred upon them."

It is to be noted that although the Brookshire interests were parties to this suit, no affirmative relief was sought, apparently upon the theory that Brookshire was precluded from ever participating in *any* production not allocable to the Yeary well under the prior decision of the Waco Court. Thus, when we approach the remaining question in the case [Can Brookshire participate in the production from May #2?], we must examine carefully the prior decision by the Waco Court and its ramifications. This is so for the simple reason that May must fail in his second and third points which we reproduce in the margin.[5]

---

4. *May* offered in evidence on this trial Kochs' brief in *Guaranty*, wherein this statement is found: "Furthermore, there was no disagreement among any of the parties in the district court—nor is there any disagreement among any of the parties in this Court as to the law applicable to the rights of these appellees— i. e., it is unanimously agreed among all parties, together with the Court below, that these appellees are entitled to receive a full 1/16th of the production from the well which was drilled and completed on the 80 acre tract in which they own a 1/16th royalty, inasmuch as they have never signed nor ratified the oil and gas lease, nor done anything which could be construed as 'communitizing' their royalty interest with other parts of the 401.22 acre tract upon which C. C. May executed the lease."
May's brief in *this* case, after quoting from Koch's brief in the prior case (supra), says: "In such [prior] suit, May asserted that there had been no communitization of royalties for two reasons. (1) That Brookshire had accepted royalties on a non-communitized basis for over six years and was therefore estopped to assert communitization and (2) That there was no communitization as a matter of law because all of the royalty owners had not executed or ratified the lease. * * * *" The second contention has reference to Koch's failure to ratify the lease—a position which both May and Koch urged with equal fervor to a successful conclusion in both the trial and appellate courts. The position taken by May and Koch in the prior suit was identical.

5. "2. The trial court erred in failing to declare invalid a pooled unit which contains acreage of a non-participating royalty owner who has not legally ratified

Having held May's major premise in point one invalid under *Rittersbacher,* supra, by sustaining Koch's appeal, the thrust of May's Point No. 2 is dissipated and it lacks any efficacy. As to the third point, however, we approach the matter somewhat differently since the trial court impliedly found against May's contention. Indeed, we find that the trial court's implied finding of good faith on the part of the operator is not only supported by the evidence, but that there is a complete lack of evidence of bad faith, a sine qua non of the theory now advanced by May. May has not pointed out to us, nor has our study of the record disclosed any cogent evidence which would warrant a finding that the operator was not acting in complete good faith in the creation of the new unit. The trial court ruled against May's contention and we do not disturb that finding. Thus, insofar as the case is presently situated, Koch can *now* participate in the production from the Morgan Sand Unit in May #2, and the pooling provision has been declared valid. But, What is Brookshire's position?—and to this we now turn.

The decision in *Guaranty* to the effect that Brookshire was estopped from participating in the royalties paid under May #1 because of his acceptance of royalties paid under the Yeary Unit is, as has been indicated previously, res judicata since we have the same lease and the same parties before us again. (See fn. 1, supra.) Nothing herein shall be construed as impinging in the slightest degree upon the full force and effect of the judgment in the prior litigation. However, as to Brookshire participating in the royalties paid under May #2, the effect of the prior judgment will be considered under the doctrine of the law of the case—not res judicata.

■ For the doctrine of the law of the case to be applicable, we must have not only an identity of the parties (which we have), but the same *factual* basis. In this case, the facts are different from those found in the former suit. Koch has now ratified the unit created under May #2, at least, insofar as it is applicable to the facts of our case, and the lessee has properly created a pool in which all of the non-participating royalty owners have either ratified or joined. May's facts this time are different from those which the Waco Court faced in *Guaranty.*

The rule of the stare decisis or law of the case is applicable when "the facts on the second appeal shall be substantially the same as on the first appeal, or at least so nearly the same as not to affect materially the legal questions involved. Frankland v. Cassaday, 62 Tex. 418, 420. * * *" Green v. Priddy, 112 Tex. 567, 250 S.W. 656, 659 (1923); 5B C.J.S. Appeal & Error § 1964d, p. 570; 5 Am.Jur.2d, Appeal & Error, § 748, p. 191; 4 Tex.Jur.2d, Appeal & Error, § 1011, p. 701; Waddell v. Empire Drilling Co., 358 S.W.2d 221, 223 (Eastland Tex.Civ.App., 1962, error ref. n. r. e.).

■ May has the full benefit of his judgment in the prior case insofar as it relates to Brookshire and he sought no relief against Koch therein. There is not a scintilla of evidence in the record which would indicate that this theory of estoppel which precluded Brookshire from participating in May #1 is applicable to the changed conditions shown in our record pertaining to May #2. May seeks to exclude Brookshire from the pool only by attacking Koch's ratification and the operator's good faith in creating the pool. We have disposed of both of these questions adversely to May's contentions, the effect of which is that Brookshire will now participate, proportionately, in the pooled royalty under May #2.

This case, resting upon undisputed facts, has been fully developed and it now be-

the lease or granted pooling rights to the lessee.

"3. The trial court erred in failing to declare that the lessee did not act in good

faith in designating the May 2–A Morgan Sand Gas Unit."

comes our duty to render the judgment which the trial court should have rendered. The judgment of the trial court setting aside the Koch ratification of the Morgan Sand Gas Unit in May #2 and denying the right of Koch to participate in the payments from the production from such sand is here and now reversed and judgment rendered upholding the validity of such ratification and the right of Koch to participate in the royalties due therefrom. The remainder of the judgment of the trial court is in all things affirmed. All costs are adjudged against the appellant, May.

Reversed and rendered in part and in part affirmed.