Jules L. MALLETT, III and Gertrude M. Delane, Appellants,

v.

J. Nixon WHEAT, Trustee, Appellee.

No. 09 85 143 CV.

Court of Appeals of Texas, Beaumont.

May 1, 1986.

Rehearing Denied May 21, 1986.

M.W. Plummer, Jefferson, Mims, Plummer & Rice, Houston, for appellants.

J.C. Zbranek, Zbranek, Hight & Fontenot, Thomas A. Wheat, Liberty, Stanley Plettman, Orgain, Bell & Tucker, Beaumont, for appellee.

## OPINION

BURGESS, Justice.

This is a trespass to try title case. Appellee filed this suit on March 7, 1982, claiming title and right to possession of a one-half undivided interest in a 13.76 acre tract of land in Liberty County. The appellants answered by plea of not guilty and also claimed title to and right to possession of the tract in dispute under various statutes of limitation and the doctrine of laches. After all the evidence was presented to a jury, the trial court granted the appellee's motion for directed verdict.

By eight points of error, appellants attack the judgment of the trial court. Under point of error number six, appellant complains the trial court erred in denying their motion for a directed verdict made at the close of the appellee's case in chief. The basis of this claimed error is that appellee had failed to meet its burden of establishing its superior title to the property through a common source of title or from the sovereign.

A directed verdict is proper only where the record contains no evidence of probative force to raise material fact questions. *See Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983). To prove superior title from a common source, the appellee needed to introduce evidence that would connect his title to a common source by a

complete chain of title, connect appellants' title to that same source, and prove the superiority of his title to that claimed by the appellants. *See Adamson v. Doornbos,* 587 S.W.2d 445 (Tex.Civ.App.—Beaumont 1979, no writ). Appellee also had to identify the property he claimed and establish its location. *Jones v. Mid-State Homes, Inc.,* 163 Tex. 229, 356 S.W.2d 923 (1962).

Appellee introduced a warranty deed from L.G. Tour and wife to John Mallett, dated October 1, 1925. This deed adequately described the land conveyed in exactly the same language by which the appellee's pleadings described the property in dispute. Appellee also introduced an affidavit of heirship executed by Louise Chargois in 1956 which stated that she was married to John Mallett in 1919, and that John Mallett had two children by a previous marriage. It identified these two children as the appellants herein. The affidavit further stated that John Mallett had divorced his former wife before marrying the affiant.

■ Next, appellee introduced the Will of John Mallett. This will was admitted to probate and the estate of John Mallett included the disputed property. The 13.76 acre tract in dispute was devised to appellants in the residuary clause of the will. The will also identified Louise Mallett as the testator's wife and named her independent executrix. This will was executed the day before John Mallett died in 1931. Therefore, appellee introduced evidence that, as of the death of John Mallett, title to the property in dispute was as follows: a one-half undivided interest in Louise Mallett, who would later marry Dewey Chargois, and a one-half undivided interest in appellants. Appellee then introduced evidence of a regular chain of title from Louise Mallett Chargois to appellee. Therefore, appellee introduced evidence that his title to the disputed property arose in 1925 and that appellants' title to the property arose in 1931 upon the death of John Mallett, and that the titles of all parties came from a common source, L.G. Tour

and wife. We hold that this evidence was sufficient to raise a fact question for the jury. Therefore appellants' sixth point of error is overruled.

■ By their eighth point of error appellants' argue the trial court erred in admitting the testimony of Reverend Paul Kluthe and certain church records into evidence. This evidence tended to establish the marriage of John Mallett and Louise Delco prior to 1925, when the property in dispute was deeded to John Mallett. The complained of evidence also tended to prove that John Mallett had divorced his former wife prior to marrying Louise. As noted earlier in this opinion, the same matters were proved by the affidavit of Louise Chargois. Appellants did not object to the introduction of the affidavit. No reversible error results from admission of testimony that is merely cumulative of similar testimony previously admitted without objection. *See Ratliff v. Clift,* 312 S.W.2d 315 (Tex.Civ.App.—Amarillo 1958, writ ref'd n.r.e.). Therefore, appellants' eighth point of error is overruled.

By points of error numbers one through four, appellants claim the trial court erred in granting appellee's motion for directed verdict because the evidence was sufficient to raise fact issues on appellants' affirmative defenses under the three, five, ten, and twenty-five year statutes of limitation.

A directed verdict can only be upheld where the record contains no evidence of probative force to raise an issue of fact on the material questions presented. All of the evidence in the record must be viewed in the light most favorable to the non-moving parties. If reasonable minds could differ as to the truth of the controlling facts, the issue must go to the jury. *See Collora v. Navarro,* 574 S.W.2d 65 (Tex.1978). Therefore, if the evidence and all reasonable inferences arising therefrom could have supported the appellants' claim of title under any of the statutes of limitation pleaded by them, then the trial court erred in directing a verdict for the appellees. *Id.*

Each of the statutes of limitation by which appellants claim title requires proof

of adverse possession. Adverse possession is defined as "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another". *TEX. REV.CIV.STAT.ANN. art. 5515* (Vernon 1958).

In the present case, the disputed tract was enclosed with, but not separated from, the property of Norris Trahan, an uncle of the appellants. The fences surrounding the property in dispute were built by adjacent landowners, apparently for the purpose of enclosing their own lands. Appellants offered deposition testimony by Norris Trahan that he had grazed cattle on the disputed tract. There is no evidence in the record of how continuously the property may have been used for grazing purposes. When the use relied upon to support the statute of limitation is grazing, there must be also at the same time sufficient enclosure, such as to give evidence that the land was designedly enclosed and to show the assertion of a claim hostile to the true owner. *Osborn v. Deep Rock Oil Corp.*, 153 Tex. 781, 267 S.W.2d 781 (1954). In *Osborn*, the Supreme Court of Texas stated that:

"The ordinary case for the acquisition of title by adverse possession, when the use is grazing, is one in which the person claiming title under the statute has built a fence or fences enclosing the land and has maintained the enclosure and continuously used the land for grazing during the statutory period. Such construction of fences and use of the land for grazing afford evidence of hostile claim. Petitioner would bring this case within that general rule.

"We agree, however, with the decision of the Court of Civil Appeals that the facts of this case take it out of that general rule and bring it under the principle announced in the following cases, that when the disputed tract of land has been casually or incidentally enclosed with other land, especially when, as here, such other land is held by the possessor under deed, the incidental enclosure and the occasional grazing of the disputed

tract by cattle straying from the titled land will not amount to such adverse and hostile possession and use as will support the statute of limitations"

■ We hold as a matter of law, that the appellants in the present case failed to prove that they or anyone had made such an actual and visible appropriation of the disputed tract as would support a defense of limitation under any of the statutes urged by appellants. Therefore, appellants' points of error numbers one through four are overruled.

■ By their fifth point of error appellants allege the trial court erred in granting appellee's motion for directed verdict because the evidence was sufficient to raise a fact issue under the doctrine of laches. We can find no argument nor authority supporting this point of error in appellants' brief. Therefore, we hold that appellants' fifth point of error has been waived and it is hereby overruled. *See Kelley v. Kelley*, 583 S.W.2d 671 (Tex.Civ.App.—Austin 1979, writ dism'd).

By their seventh point of error appellants urge the trial court erred in awarding appellee mineral lease royalties accruing before appellee ratified such mineral leases. Appellants executed mineral leases pertaining to the disputed property on April 8, 1974. The property was unitized for production and royalty purposes with other nearby property on November 5, 1976. Sometime after the execution of this unitization agreement, a well was drilled within the unit, but not on the property at issue in this suit. The appellee ratified the leases and unitization agreement on September 27, 1984. The lessee of the minerals in dispute deposited funds in the registry of the court which represented one-half of the royalties due to the owners of the disputed tract from the production of the unit from 1980 until the time of trial.

Appellants urge that the appellee is not entitled to royalties resulting from production occurring prior to September 27, 1984, when appellee ratified the leases and unitization agreement under authority of *Supe-*

*rior Oil Co. v. Roberts,* 398 S.W.2d 276 (Tex.1966) and *May v. Cities Services Oil Co.,* 444 S.W.2d 822 (Tex.Civ.App.—Beaumont 1969, writ ref'd n.r.e.).

Appellants' reliance on these cases is misplaced. When the appellants executed the leases and unitization agreement in question they were cotenants of the appellee's predecessor in title. The cases urged as authority by appellant do not deal with this situation. In *Superior, supra,* a cotenant had purported to lease the entire property for oil and gas production. The cotenant which had not joined in the lease sued the lessee for oil and gas produced from land unitized with his land. The court held that since the plaintiff had not ratified the lease or unitizing agreement, and the minerals were not produced from plaintiff's land, he could not recover anything from the lessee. In *May, supra,* a non-participating royalty owner had refused to ratify a previous unitization agreement when it was to his advantage to do so, then he ratified a second unitization agreement when it became clear that doing so would be to his benefit. The court held that the non-participating royalty owner could not, therefore, recover for royalties resulting from production prior to his ratification.

We believe the present case is controlled by *Van Deventer v. Gulf Production Co.,* 41 S.W.2d 1029 (Tex.Civ.App.—Beaumont 1931, writ ref'd). There this court held that "[i]f one cotenant assumes to deal with the whole property and to convey the whole of the common property, then his cotenant should certainly have the right to ratify the sale of the property and claim his share of the profits arising from the sale." *See also Texas and Pacific Coal & Oil Co. v. Kirtley,* 288 S.W. 619 (Tex.Civ.App.—Eastland 1926, writ ref'd). Since the appellants chose to deal with the property as if they were its sole owners and since the appellee has ratified the leases and unitization agreement, it would unjustly enrich the appellants to allow them to keep any part of their cotenant's share of the benefits of such agreements. For these reasons appellants' eighth point of error is overruled. The judgment of the trial court is affirmed.

AFFIRMED.