## CLOSNER v. GANNAWAY et ux.
### No. 9778.

Court of Civil Appeals of Texas. Galveston.
Nov. 10, 1932.

Rehearing Denied Dec. 15, 1932.

Bryan, Cosby, Suhr & Bering and C. W. Bell, all of Houston, for appellant.

E. A. McDaniel, of McAllen, and Montgomery, Hall & Taylor, of Edinburg, for appellees.

GRAVES, J.

This is the second appeal in this litigation, the first one having gone to the San Antonio Court of Civil Appeals from the district court of Hidalgo county, the present one having come here from the district court of Harris county, where a change of venue had taken it from Hidalgo county subsequent to a reversal on that first appeal; as an examination of its opinion, reported in 32 S.W.(2d) at page 523, will disclose, the sole question determined by the San Antonio court was whether or not the trial court had erred in sustaining a general demurrer to a petition then presented by the appellant here, which, in legal effect, presented this single proposition of law: "Can a principal refuse to pay his broker a commission for procuring a lease when an agreement to execute the lease had been entered into and is not carried out because of the wrongful acts of the principal?" The appellate court held that in such an instance the principal could not escape liability to pay the commission by reason of his own wrongful acts, and that consequently the petition so presented had stated a good cause of action.

Following that reversal, however, the appellant filed what is termed "a supplemental amended petition," wherein he materially changed the legal effect of the cause of action declared upon, in that: Whereas, he formerly averred that the $10,000 surety company bond specified to be executed by the lessee he procured as appellees' broker had already been furnished and in all things accepted by them, this time he charged that the appellees had waived the requirement of the surety company bond and had accepted a personal one in lieu thereof. The case now, therefore, is decidedly different from what it was when passed upon by the San Antonio court; under the general demurrer, that court was required to take as true the former allegation that the specified surety company bond had in fact not only been given by the lessee but accepted by the appellees, whereas, the trial court in the present instance necessarily had to give the appellant an opportunity on the facts to prove his averment this time that the requirement of the surety company bond of the lessee to guarantee performance of his undertaking had been abrogated, and in lieu

thereof that the parties had agreed upon a personal bond instead; accordingly, the trial court this time overruled the general demurrer to the present pleadings of the appellant, and on a holding that he had failed to prove this abrogation in a legally binding way upon the appellees, peremptorily instructed the jury in their favor. So that, the case now comes here upon a challenge of that action below.

■ Obviously, we think, under all the authorities, appellant's major insistence that the cited holding of the San Antonio court before constitutes the law of this case upon the present appeal and as such is binding upon this court cannot be sustained, since the legal issues presented in the two different trials were by no means identical. White, Smith & Baldwin v. Downs, 40 Tex. 225, 226; Frankland v. Cassaday, 62 Tex. 418; Cole v. Estell (Tex. Sup.) 6 S. W. 175; M., K. & T. Ry. Co. of Texas v. Redus, 55 Tex. Civ. App. 205, 118 S. W. 208; Barcus et al. v. J. I. Case Threshing Machine Co. (Tex. Civ. App.) 209 S. W. 205; Roberts v. Armstrong (Tex. Com. App.) 231 S. W. 371.

This calls for a determination of the further inquiry: Was the peremptory instruction—with consequent judgment for the appellees—error?

■ We conclude not, mainly upon these considerations: The two written contracts declared upon and introduced by the appellant himself, together with the uncontroverted evidence, seem to us to class the case, not as that of "a broker who has produced a lessee ready, able, and willing to lease, and with whom the principal contracts on terms satisfactory to himself, hence is entitled to his commission, though the lease is never actually made, due to the fault of the principal," but an instance of "where the commission is payable only in the event the contract of sale is completed, and the broker will be denied recovery, because he failed to show a performance, and that the failure was due solely to the fault of the principal." There is no trouble about the law, nor need for citations applying it, since the parties here mutually agree that each of these quoted rules is uniformly sustained.

The material portions of the written agreement to pay a commission, upon which appellant sued, are these:

"Whereas, J. J. Closner has acted as agent for Julia S. Gannaway and L. A. Gannaway *in procuring for them a lease* with Edinburg Amusement Company on Lots Seven (7), Eight (8), and Nine (9) in Block Number Two Hundred and Ninety-eight (298), of the town of Edinburg, Hidalgo County, Texas, a copy of an agreement for the execution of said lease being attached hereto and made a part hereof.

"*And whereas, the said Julia S. Gannaway and L. A. Gannaway have agreed to pay J. J. Closner a commission for procuring said lease.*

"Now, therefore, we, the said Julia S. Ganaway and L. A. Ganaway agree and obligate ourselves to *pay to the said J. J. Closner for procuring said lease* the sum of (amount fixed at a per cent. of the expected rentals), *said commission to be due and payable at the time of the execution of the lease between the said Julia S. Gannaway and L. A. Gannaway and the Edinburg Amusement Company.*

"[Signed]     Julia S. Gannaway
"L. A. Gannaway,
"Pro Forma."

(Italics ours.)

The appellees, as lessors, were to build a theater on the property for the lessee at a cost of from forty-five thousand to fifty-five thousand dollars; the further pertinent part of the agreement to enter into the lease being as follows, italics also ours:

"Second Party further agrees to equip said theater, and install therein furniture, fixtures and equipment necessary for the operation of a first-class theater, which shall cost not less than the sum of Eighteen Thousand ($18,000.00) Dollars, and to execute a chattel mortgage on same to First Parties, which shall be a first lien on said furniture, fixtures and equipment for the purpose of securing the payment of rents, taxes, insurance, and other items, which Second Party agrees to pay, according to the terms of said lease and this contract.

"It is further agreed that said lease shall provide for an option for the renewal of same for an additional ten (10) years at the highest rate of rental which First Parties may be offered.

"It is further agreed that said lease shall contain all other terms and provisions of the usual and customary form of lease of city property, not in conflict with the above and foregoing, which general form of lease is attached hereto, marked 'Exhibit A,' and made a part hereof.

"*Second Party agrees to furnish at the time of the execution of this agreement a bond in the amount of Ten Thousand ($10,-000.00) Dollars, signed by a reliable surety company in favor of First Parties, guaranteeing the performance of the terms and conditions hereof*, which bond shall continue in full operation and effect after the permanent lease is signed and until a valid first lien shall have been given to First Parties on the furniture, fixtures and equipment in place in said theater at a cost price and value of not less than Eighteen Thousand ($18,000.-00) Dollars; and it is agreed by the parties hereto that said sum of Ten Thousand ($10,000.00) Dollars shall be, and is agreed

upon as the amount of damages sustained by First Parties in the event Second Party shall fail to execute said lease and said chattel mortgage, and that said sum of Ten Thousand ($10,000.00) Dollars shall be forfeited to First Parties, as liquidated damages herein, in such event."

Thus, by its plainly expressed terms, the appellees' contract to pay the commission was only for "procuring for them a lease," and then only "at the time of the execution of the lease" between themselves and the amusement company; further, by equally explicit condition precedent, the attached copy of the lease, made a part of it, required as an indispensable ingredient of the transaction as a whole, contemporaneously with both the foregoing documents as its component parts, the furnishing by such lessee of a $10,000 surety company bond, guaranteeing the performance of the terms of the lease.

By the undisputed evidence, no such bond was ever given, no lease was ever executed by the amusement company, no building was ever erected by the appellees, no change was ever made in the writing governing the payment of a commission to the appellant, nor, in our opinion, is there sufficient evidence in the record to bring about any change or modification with reference to the surety bond in the contract to execute the contemplated lease.

█ It is true there was testimony in appellant's behalf, not only that he had never as a part of his broker's agency in this matter for them agreed with appellees to furnish them a surety company's bond, but that he had—merely as lagnappe on the deal—secured a personal bond instead, which they had accepted, with direction thereafter for the architects to go ahead with plans for the building; but this does not, in the circumstances otherwise obtaining, go to the root of the matter. The written instruments, taken and construed together as they must be, specifically fixed his obligation to obtain a lease, accompanied at the time by the lessee's bond in the amount of $10,000, signed by a reliable surety company.

The pleading and proof in behalf of the appellees was to the effect that they had never by word or deed waived or changed the stipulated requirement of the surety company bond, that it had from beginning to end been the sine qua non of their making the lease at all, and that the failure to furnish it as agreed had constituted the sole cause of their neither going on with the proposal nor paying the appellant the commission they had promised him, provided he obtained a lease so safeguarded.

The quoted agreement to make the lease, dated June 5, 1928, was the contract of Mrs. Gannaway, joined pro forma by her husband, as lessor-first parties, and of E. F. Brady,

trustee for the proposed Edinburg Amusement Company, a corporation as lessee-second party; the corporation, it seems, never having been organized nor, as above stated, having executed any lease. The personal bond also alleged by appellant to have been obtained by him and accepted by the appellees in lieu of the specified one by the surety company, bore date of August 16, 1928, and was signed only by Edinburg Amusement Company by E. F. Brady as principal, with Brown White and E. F. Brady as sureties.

██ Thus by his amended pleadings subsequent to the former reversal, as well as by his proof presented on this trial, appellant sought to modify the pre-existing contract between himself and the appellees calling for "a bond in the amount of $10,000.00, signed by a reliable surety company in favor of First Parties, guaranteeing the performance of the terms and conditions" of the lease, by showing that they had mutually agreed to substitute the described personal bond in its place; to accomplish that it was necessary for him to show, not only that the minds of the parties met upon the subject-matter, but that that fact was communicated back and forth between them to the extent that they knew their minds had met upon it and that mutual assent to the change existed. Shearman v. Poe et al. (Tex. Civ. App.) 9 S.W.(2d) 762; Patton v. Rucker, 29 Tex. 402, 408.

The evidence here conclusively fails to show any such situation, it being plain from the testimony of Mr. Brady himself, as well as that of Mr. and Mrs. Gannaway, that their minds never met upon, that they did not make known to each other, and that they never mutually assented to the alleged change from the surety company bond to a personal one in their contract; even if it could be said that the testimony in behalf of appellant above referred to raised an issue of fact over whether they reached an agreement in their own minds, that fell short of carrying the matter to the jury as a material issue, because it indisputably appears, particularly from the testimony of Mr. Brady himself, that the fact of having so agreed was never communicated from one to the other, hence the mutual assent necessary to effect such a modification was wholly lacking. Shearman v. Poe, supra.

█ It therefore results that the requirement of a surety company bond in the original contract of June 5, 1928, remained in full force and effect, and consequently the appellees were within their rights in refusing to go further, upon the noncompliance therewith by the proposed lessee.

The judgment of the learned trial court will be affirmed.

Affirmed.