**W. R. ROSS and R. O. Sensibaugh,
Appellants,**

v.

**J. E. McLELLAND, Appellee.**

No. 15630.

Court of Civil Appeals of Texas.

Fort Worth.

July 8, 1955.

Rehearing Denied Sept. 16, 1955.

Brewster, Pannell, Leeton & Dean, W. C. Pannell and Leo Brewster, Fort Worth, for appellants.

Samuels, Brown, Herman & Scott, Ardell M. Young and William M. Brown, Fort Worth, for appellee.

BOYD, Justice.

Appellee J. E. McLelland recovered judgment against appellants W. R. Ross and

R. O. Sensibaugh for $32,067.56. This is the second appeal of the case. A detailed statement of the background of the controversy will be found in the former opinion. Ross & Sensibaugh v. McLelland, Tex.Civ.App., 262 S.W.2d 205.

The suit arose out of a written contract made on February 23, 1951, between appellants as sellers and appellee as purchaser, for the sale and purchase of 1,500 cows, with calves thrown in, at $283.50 per head. The cows were on the W. R. Ross Ranch in King County, Texas, which ranch consisted of several large pastures. If requested, the cattle were to be delivered by pasture, provided the purchaser gave the sellers at least seven days notice on any delivery. The purchaser was allowed a ten per cent cut after all unmerchantable cows were taken out. Appellee deposited with appellants $40,000 cash as partial payment on the cattle; and the contract provided that appellee should pay in full for the first 500 cattle received, "and as he receives the balance he is to deduct $40.00 per head until delivery is completed, where-in he will have received credit for the $40,000.00 deposit." Delivery was to be made "at shipping pens f. o. b. cars Benjamin, Texas from this date to June 1, 1951."

By June 1, 1951, appellee had received 853 cows, and upon delivery had paid the full price of $283.50 per head for the first 500 head, and for all above the 500 he had paid $243.50 in cash, and from the deposit he was given credit for $40 for each cow. On that day, it was mutually agreed that the final delivery date would be extended to June 4, 1951. On June 4, 1951, appellee had on deposit with appellants the sum of $32,067.56, which included $25,800 out of the original $40,000 deposit, and credits for overpayments on earlier deliveries of $6,267.56.

The pleadings of all parties were amended after the first trial, and appellee went to trial on his third amended petition. The first count alleged the terms of the contract, alleged that appellants had breached the same, and that appellee had been damaged; the second count was in

part as follows: "In the alternative, and independently of all other grounds of recovery alleged and set forth herein, plaintiff says that defendants have in their possession the sum of $32,068 that rightfully belongs to this plaintiff, said sum being the balance remaining of the original $40,000 purchase money deposit paid by plaintiff to defendants at the time said contract was entered into, and payments made to the defendants in excess of the contract price of said cattle, and that plaintiff is entitled to recover said amount from said defendants as and for money had and received by them and wrongfully, injustly and inequitably withheld and retained. In this connection plaintiff would show that on June 4, 1951, the last and final date for performance of said contract, defendants Ross and Sensibaugh refused to deliver or tender for delivery to plaintiff any of the cattle then rounded up and ready for delivery, unless plaintiff would agree to comply with certain additional demands and requirements imposed by the defendants. Such demands were: first, that plaintiff pay in full for the cattle then rounded up at the contract price of $283.50 per head, without allowing credit for the $32,068 in money plaintiff then had on deposit with the defendants; secondly, that plaintiff agree to come back to the ranch at some later, unspecified date to accept delivery of additional cattle; and thirdly, that he, McLelland, leave on deposit with the defendants the sum of $5,000 as security for that portion of the contract relating to the sale of 40 bulls, even after the cow contract had been fully and finally performed." He further alleged that time of delivery was of the essence of the contract.

The jury found: that time was of the essence of the contract; that on June 4, 1951, appellants refused to deliver the cows then rounded up unless appellee would agree to return to the ranch at a later date and accept delivery of additional cattle to be later rounded up; that appellants refused to allow appellee to take credit on the purchase price of the cows then rounded up for the full sum he then had on deposit with appellants; that appellants demanded

that appellee pay the full price of $283.50 per head for all cows then rounded up and refused to allow him credit at the rate of $40 per head on said cattle; that appellants failed to tender for delivery the cows then rounded up; that appellants then had rounded up 432 merchantable cows over and above the ten per cent to be cut out; that on said date the cows were worth $255.15; and that appellee was ready, able and willing to pay for the cows then rounded up.

When appellee arrived at the ranch on June 4, 1951, appellant Sensibaugh was there. It is not contended by appellee that he was then ready and able to pay for the balance of the 1,500 head; but he insisted on using the balance of the deposit in part payment for the 432 head then gathered, and giving checks and drafts for the remainder of the purchase price. He did not intend to return for any more cows. Sensibaugh testified that he would not have delivered the cows then gathered even if appellee "had had the gold from Fort Knox, to have presented" in payment, unless appellee agreed to return to the ranch and accept delivery of enough other cows to make the total 1,500 head. Appellant Ross testified that on that day, over the telephone, he told appellee that "if you had the gold and was going to accept those cattle, just like you have got them there, we wouldn't let you have them." Ross also said to Sensibaugh, over the telephone, "Don't let McLelland draw down what he has got on the books and make him come back after more cattle."

Appellants have many points of error, but their principal contention is that there was no evidence, and the evidence was insufficient, to support the jury finding that appellee was ready, able and willing to pay for the cows rounded up on June 4, 1951. They do not contend that the evidence fails to support the findings that appellants, on June 4, 1951, refused to deliver to appellee the cattle then rounded up unless he would agree to return to the ranch at a later date and accept delivery of additional cattle to be later rounded up, and that appellants refused to allow appellee to take credit from the deposit at the rate of $40 per head on said cattle. In their brief, they say, "The breach by the appellants relieved him (appellee) of the burden of showing a tender, but he still had to show his readiness and ability to pay."

If appellants breached the contract on June 4, 1951, we think it was not necessary for appellee to allege or prove that he was then willing or able to perform in order to be entitled to recover the overpayments and balance of the purchase money deposit remaining in appellants' hands. In Cundiff v. McLean & Miller, 40 Tex. 392, it was said that it is a well established rule of law that where an agreement is mutual and dependent and one party fails to perform his part, the other party may treat the agreement as rescinded. In Brown v. Binz, Tex.Civ.App., 50 S.W. 483, it was held that although a party may not recover damages for breach of a contract unless he is willing and able to perform his obligations under it, he may nevertheless, after a breach by the other party, recover the money deposited to guarantee his performance without proving that he is able and willing to perform. See also 17 C.J.S., Contracts, § 429, p. 912; 5 Corbin on Contracts, p. 478, sec. 1108.

And if neither party was able and willing to perform fully on the last day for performance, we are of the opinion that appellee could recover the unused balance of the purchase money deposit, and the overpayments. 78 C.J.S., Sales, § 499, p. 167. "* * * neither appellee nor appellant tendered performance of the contract; both apparently abandoned the contract. Appellant did not plow the land as he had agreed to. He only built three tenant houses, where the contract called for at least five. He did not secure the $40,000 loan on the land that he had contracted to secure. He never tendered performance of this part of the contract, and the evidence is clear that he was unable to do so. On the other hand, appellee did not tender performance. She did not furnish an abstract showing good title in her. * * * We thus come to the conclusion that appel-

lant is not in a position to demand payment for the improvements which he placed upon appellee's land, as he breached his contract. Appellee is not in a position to demand the earnest money posted by appellant, as she did not tender performance. * * * The $2,500 earnest money belonged to appellant, and, until appellee shows herself to be in a position to claim it as a forfeiture, it is not her money." Irvin v. Lambert, Tex.Civ.App., 70 S.W.2d 495, 498. We do not think that the holding in Terrell, Atkins & Harvin v. Proctor, Tex.Civ.App., 172 S.W. 996, cited by appellants, is in opposition to the conclusion here expressed. In that case, the plaintiffs were unable to perform, and recovery was denied for damages, but it was held that the defendants had suffered no loss, and recovery was allowed the plaintiffs for the amount deposited to guarantee their performance.

■ We are unable to agree with appellants that the holding in the former appeal that appellee's willingness and ability to pay was a material issue is "the law of the case." In the other trial, there was a claim for damages because of the alleged breach of the contract by appellants. The case now before us was tried on amended pleadings, and recovery was sought and allowed, not for damages, but for the balance of the purchase money deposit and for other sums representing overpayments by appellee to appellants. "The 'law of the case' does not necessarily apply where issues presented on the two different trials are not identical. And so where the second trial following reversal and remand is on amended pleadings of both parties, the doctrine does not apply." 3–B Tex.Jur., p. 782, sec. 1114. See also Closner v. Gannaway, Tex.Civ.App., 55 S.W.2d 888, error refused; Roberts v. Armstrong, Tex.Com.App., 231 S.W. 371; Mitchell v. Western Union Tel. Co., 23 Tex. Civ.App. 445, 56 S.W. 439, error refused.

Finding no error, the judgment is affirmed.