**TRANSPORT INSURANCE COMPANY,**
Appellant,

v.

**EMPLOYERS CASUALTY COMPANY,**
Appellee.

No. 17667.

Court of Civil Appeals of Texas,
Dallas.

July 30, 1971.

Rehearing Denied Sept. 17, 1971.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

James H. Holmes, III, Burford, Ryburn & Ford, Dallas, for appellee.

CLAUDE WILLIAMS, Chief Justice.

Employers Casualty Company issued its liability policy to Prior Products, Inc., covering its vehicles, with liability limits of $100,000/$300,000. Transport Insurance Company issued its liability policy to Hunsaker Truck Lease, Inc., with liability limits of $300,000/$500,000. Both policies contained identical "Other Insurance" clauses providing for a pro rata division of losses.

By written agreement, Hunsaker leased to Prior Products a truck. The leased truck, while being driven by a Prior Products employee, was involved in a collision with an automobile in Indiana and as a result Mr. and Mrs. Peter Siegel suffered personal injuries. At the time of the accident the leased truck was being used to pull a trailer which was owned by Prior Products. The Siegels filed suit against Prior Products, Inc. to recover damages. The defense of the suit was tendered to Transport on the theory that Prior Products was an additional insured under the policy issued by Transport to Hunsaker. Transport denied liability under its policy and Employers Casualty assumed the defense of the suit. Thereafter Employers paid the Siegels $6,750, together with accrued attorney's fees of $607.50, or a total of $7,357.50. It is agreed that such sum was a reasonable settlement and that Employers consummated the same in good faith.

Employers filed suit against Transport seeking pro rata contribution and the trial court granted summary judgment in favor of Employers for five-eighths of the settlement, or $4,598.44. Transport appealed and the Court of Civil Appeals at Waco reversed and remanded the judgment of the trial court holding, as a matter of law under authority of Traders & General Insurance Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S. W.2d 142 (1943), that there was no right of contribution between two insurance companies subject to pro rata liability. Transport Insurance Co. v. Employers Casualty Co., 434 S.W.2d 704 (Tex.Civ.App., Waco 1968). The Supreme Court granted a writ

of error and by a divided court affirmed the judgment of the Court of Civil Appeals. Employers Casualty Co. v. Transport Insurance Co., 444 S.W.2d 606 (Tex.Sup. 1969). After upholding its decision in Hicks Rubber Company, and thereby denying recovery for contribution, the Supreme Court went on to say that Employers' remedy would lie in a suit asserting its right to payment through contractual, conventional or equitable subrogation.

Following the suggestion of the Supreme Court, Employers returned to the trial court and amended its pleadings wherein it sought a declaratory judgment decreeing that it was subrogated to the rights of Prior Products, which it alleged was an additional insured under the liability policy issued by Transport to Hunsaker. Transport amended its answer and alleged that by virtue of the express exclusionary provisions of its policy Prior Products did not become an additional insured and therefore there was no liability. Transport further pled that the lease agreement between Hunsaker and Prior Products expressly provided that Prior Products would not be covered by any liability insurance carried by Hunsaker and that since Employers was suing only a subrogee of Prior Products it could have no greater right than Prior Products. Both Employers and Transport filed motions for summary judgment supported by affidavits, depositions, admissions, and the opinions in the prior cases. The trial court sustained the motion filed by Employers and denied the motion filed by Transport. Judgment was thereafter rendered in favor of Employers against Transport in the sum of $4,598.44 representing five-eighths pro rata share of the settlement with the Siegels.

Seeking reversal and rendition of the trial court's judgment Transport, in two points of error, asserts that the record demonstrates, as a matter of law, that the policy issued by Transport did not afford coverage to Prior Products for the accident involving the Siegels and therefore Employers could not recover anything as

subrogee of Prior Products. Transport argues that the trial court should have sustained its motion for summary judgment and rendered a take nothing judgment against Employers.

The crucial question presented, therefore, is whether the liability policy issued by Transport to Hunsaker extended coverage to Prior Products. Proper resolution of this question requires a careful study and analysis of not only the basic provisions contained in the policy itself but also of certain endorsements appearing thereon.

The basic policy issued by Transport to Hunsaker appears to be the standard Texas automobile public liability policy which affords the insured liability protection for bodily injury in Coverage A, and property damage protection in Coverage B. Paragraph III of the insuring agreements contains "Definitions of Insured" and provides in (2) that the unqualified word "insured" includes the named insured and "under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *." Immediately following this we find the following exclusion:

"* * * The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:

(a) With respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company * * *.

(b) To any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, * * *."

Subsequently there was added to and attached to the policy Endorsement No. 80 which applied to "(Garage Premises—Op-erations—Automobiles)" and which had the effect of abrogating the exclusion for garage employees appearing in Paragraph III(2) (b) set out above. This endorsement contained the specific exclusion for "any automobile while rented to others by the named insured * * *."

On the same date Endorsement No. 81 entitled "DRIVERLESS CARS—GROSS RECEIPTS OR MILEAGE BASIS—COMMERCIAL AUTOMOBILES" was added to the policy. The material parts of this endorsement are as follows:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability, * * * applies with respect to all automobiles, including trailers, used for the purposes stated as applicable thereto in the schedule forming a part hereof, subject to the following provisions:

1. Definition of Insured. Subject otherwise to the provisions of the Definition of Insured agreement of the policy:

(a) the insurance with respect to any driverless car applies to the named insured and rentee;

* * * * * *

7. Definitions. 'Driverless Car' means an automobile of the commercial type including trailers and semitrailers while rented without the named insured or a chauffeur of the named insured in attendance."

The "Schedule" appears at the bottom of the endorsement and under the column labeled "Purposes of Use" there appears the word "Commercial".

The basic policy contains the usual pro rata clause and a provision for subrogation rights to the company.

The identical provisions with reference to pro rata payment and subrogation were contained in the policy issued by Employers Casualty Company.

Employers takes the position here, as it did in the trial court, that the provisions

of the policy issued by Transport to Hunsaker, and especially Endorsement 81 thereon, extended public liability coverage to Prior Products, the rentee of Hunsaker, so that, by virtue of its payment of the entire loss on behalf of Prior Products, it is enabled, as a matter of law, to recover against Transport by virtue of the subrogation provisions of its policy. Transport argues to the contrary that neither its basic policy provisions nor the endorsement extended coverage to Prior Products, as a matter of law.

■ There appears to be no doubt but that the basic terms of the policy issued by Transport to Hunsaker specifically exclude coverage if anyone "other than a named insured" is using the leased truck "with any trailer owned or hired by the insured and not covered by like insurance in the company." It is undisputed that Hunsaker leased a truck-tractor to Prior Products but it is also agreed that Hunsaker did not lease a trailer to Prior Products. It is without dispute that at the time of the accident made the basis of the Siegels' claim the leased truck was pulling a trailer that was not insured by Transport. Therefore, by the express terms of the policy there was no coverage unless it can be said, as contended by appellee, that Endorsement 81 had the legal effect of abrogating the basic exclusion relating to leased vehicles. A careful analysis of the endorsement, when considered in the light of the basic policy and other endorsements, leads us to the conclusion that Endorsement No. 81 does not have the effect of making Prior Products the named insured and does not afford coverage to the trailer attached to the leased truck and which was involved in the collision.

It is of paramount significance to note that Endorsement No. 81 expressly says that "such insurance as is afforded by the policy for Bodily Injury Liability * * *" applies to the "rentee" of any driverless car, "subject otherwise to the Provisions of the Definition of Insured agreement of the policy." The term "driverless car" is specifically defined as a commercial automobile, including a trailer, while rented without the named insured or chauffeur of the named insured in attendance. Thus it is obvious that such endorsement merely affords the rentee of the driverless car "such insurance as is afforded by the policy" and reference to the policy reveals the specific provision that same does not apply when the leased vehicle is being used, by someone other than the named insured, to pull a trailer not covered by insurance issued by Transport.

We agree with appellant that Endorsement 81 reveals a purpose not to abrogate the basic insuring agreements, referred to above, but was intended to amend Endorsement 80 which provides for garage liability and abrogating the customary exclusion for garage employees which appears in Paragraph III(2) (b) of the insurance policy. Endorsement No. 81 limits the rented car exclusion in Endorsement No. 80, covering automobiles rented to others by the named insured to the extent that such automobile falls within the definition of "driverless car". It also amends the "hired car" exclusion in the base policy, but it cannot be said to affect the uninsured trailer provisions which are expressly excluded. When we construe Endorsements 80 and 81 together the same afford Prior Products, as rentee of the driverless car, only that insurance afforded by the base policy and since the provisions contained therein specifically exclude a trailer owned by Prior Products and not insured by Transport it cannot be said that Prior Products was the named insured within the definition of the policy on the occasion in question.

A similar situation was presented to the court in Mountain States Mutual Casualty Co. v. Barsh, 330 F.2d 200 (5th Cir. 1964), where the same contention was advanced that a "hired car" endorsement abrogated the basic provisions of the policy similar to those in this case. The court held that the endorsement did not have the effect of abrogating the basic provisions of the policy

and that the policy did not apply unless both the tractor and the trailer were covered by like insurance in the same company.

In Inter-Insurance Exchange of Chicago Motor Club v. Westchester Fire Insurance Co., 25 Wis.2d 100, 130 N.W.2d 185 (1964), the Wisconsin Supreme Court pointed out the significance of the language of an endorsement:

> "We cannot escape the conclusion that the phrase in the endorsement 'such insurance as is afforded by the policy' refers to the entire body of the policy and when the endorsement *in toto* is read in conjunction with the policy, the exclusion is preserved and included in the endorsement. Under this construction all portions of the policy and of the endorsement are given effect. We therefore reverse the order of the circuit court."

Accordingly, we hold that the insurance policy issued by Transport to Hunsaker did not extend coverage to Prior Products on the occasion of the collision involving the Siegels which resulted in their claim and recovery. Such being true Prior Products, Inc. acquired on rights against Transport and Employers by paying the entire claim acquired no subrogation rights.

Appellee Employers seeks to interdict the right of Transport to deny insurance coverage to Prior Products by taking the position that the prior opinion of the Supreme Court foreclosed the question of coverage. Employers argues that the Supreme Court, either expressly or impliedly, held that Prior Products was an extended insured under the Transport policy and therefore, in this action, the doctrine of *res judicata*, law of the case and *stare decisis* is applicable.

To properly evaluate the validity of this argument it becomes necessary to determine the issues presented to the Court of Civil Appeals and to the Supreme Court in the first appeal. As stated, Employers instituted that action seeking recovery against Transport solely on the theory of contribution. Employers filed its motion for summary judgment. Transport did not file a motion for summary judgment. In that posture of the case the burden was cast upon Employers to establish, as a matter of law, that it was entitled to recover against Transport on the theory of contribution. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.1970). At that stage of the case it was not incumbent upon Transport to do anything other than resist the motion for summary judgment and this it did simply by asserting and relying upon the Supreme Court's decision in Hicks Rubber Company, supra. The trial court granted the Employers' summary judgment motion and Transport appealed taking the position that even assuming, *arguendo*, that it was an insured the theory of contribution in favor of Employers had been effectively barred by the Supreme Court and therefore the summary judgment against it was erroneous. The Court of Civil Appeals agreed with Transport and reversed and remanded the judgment. The Supreme Court affirmed this decision, thereby upholding the doctrine of Hicks Rubber Company, but in doing so proceeded to say that Employers was not without a remedy. The court said: "Its remedy for recovery from Transport of a pro rata part of the payment to the Siegels, as clearly indicated by the many cases listed above from other jurisdictions, lies in a suit asserting its right to payment through contractual or conventional subrogation to the right of the insured." The obvious effect of the opinion of the Supreme Court was to wipe out the former judgment and send the matter back to the trial court where Employers, at the suggestion of the Supreme Court, might start the case anew under a different theory than that presented in the first instance. So the case did go back to the trial court and Employers did amend its pleadings and, for the first time, asked for relief under the theory of subrogation.

We think that it is obvious from a careful reading of the opinion of the Supreme Court that when it suggested to

Employers that it had a "remedy" which "lies in a suit asserting its right" it surely did not mean to say that Employers would be assured of success in such a suit nor did it mean to convey the impression that Transport, in such a suit filed by Employers, would be foreclosed from amending its pleadings and asserting any legitimate defense which it might have thereto.

We do not believe that "the law of the case" bars Transport from pleading policy exclusions or any other defenses. The doctrine of "the law of the case" is defined as that principle under which the determination of questions of law, where such determination has already been made on a prior appeal to a court of last resort, will generally be held to govern the case throughout all of its subsequent stages. 4 Tex.Jur.2d, § 1007, p. 696. The doctrine does not necessarily apply where the issues presented at the two different trials are not identical. This is especially true where, on the second trial, following the reversal and remand of the cause on appeal, the pleadings are amended by both parties. Under this situation the doctrine is inapplicable. Rose v. Baker, 143 Tex. 202, 183 S.W.2d 438 (1944); Closner v. Gannaway, 55 S.W.2d 888 (Tex.Civ.App., Galveston 1932, writ ref'd); Seydler v. Keuper, 133 S.W.2d 189 (Tex.Civ.App., Austin 1939, writ ref'd); Ross v. McLelland, 281 S.W.2d 773 (Tex.Civ.App., Fort Worth 1955, writ ref'd n. r. e.).

We are of the opinion that appellee's motion for summary judgment should have been overruled by the trial court and that appellant's motion for summary judgment should have been sustained. We therefore reverse the trial court's judgment and render judgment that Employers Casualty Company do have and recover nothing against Transport Insurance Company.

Reversed and rendered.