MED CENTER-final 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 





NO. 3-91-584-CV





 MED CENTER BANK,



 APPELLANT


vs.





 M. D. FLEETWOOD,



 APPELLEE



 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT



NO. 435,455, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING


 





 This is a subrogation case before this Court on its second appeal. M. D. Fleetwood
sued Med Center Bank ("Med Center") seeking a declaratory judgment that Fleetwood's leasehold
in certain real property was superior to Med Center's interest, obtained by purchase at foreclosure
sale, in that same property. Med Center counterclaimed seeking a judgment declaring that its
interest was superior. Med Center successfully moved for a summary judgment. However, on
the first appeal of this cause, we reversed the summary judgment and remanded the cause for trial. 
See Fleetwood v. Med Ctr. Bank, 786 S.W.2d 550 (Tex. App.--Austin 1990, writ denied)
(Fleetwood I). At trial, Fleetwood prevailed and, in addition to the declaration that his leasehold
was superior to Med Center's interest, was awarded trespass damages and attorney's fees. Med
Center now brings this appeal on eight points of error. We will reverse the judgment of the trial
court and render judgment in favor of Med Center.


BACKGROUND


 In March 1984, Fleetwood and two other individuals, Messrs. Bradshaw and
Looney, formed a partnership, the Center Hill Joint Venture ("Center Hill"), to develop
approximately 24 acres of raw land for commercial use. Fleetwood held a 55 percent ownership
interest in Center Hill, and Bradshaw and Looney each held a 22.5 percent interest. The principle
project on the land was a shopping center. While the shopping center project occupied only a
portion ("the shopping center tract") of the 24-acre tract, the tract could not be further subdivided
because of zoning restrictions. The project was initially financed by interim construction
financing, secured by a deed of trust on the entire 24-acre tract.

 After the shopping center was completed, but before permanent financing had
replaced the interim construction financing, Fleetwood sold his interest in Center Hill to the joint
venture. This transaction closed on February 3, 1986. As consideration for his interest,
Fleetwood was to receive $479,000 in cash and a promissory note for $1,391,000 ("the Fleetwood
note"). The Fleetwood note was secured by a deed of trust ("the Fleetwood deed of trust") on the
entire 24-acre tract, a standby letter of credit in the amount of $695,000, and the personal
guarantees of the two remaining partners. The Fleetwood deed of trust provided that Fleetwood
would subordinate his lien to any lien securing the permanent financing on the shopping center
tract. The parties also executed a lease agreement whereby Fleetwood was granted a 55 percent
undivided interest in a 99-year lease ("the lease") (1) of the two portions of the tract not occupied
by the shopping center ("the leased tracts"). (2) The lease expressly provided that it was "subject
to" the Fleetwood deed of trust. A "Memorandum of Lease Agreement" and the Fleetwood deed
of trust were filed in the Travis County Real Property Records, in respective order.

 Subsequently, Nationwide Life Insurance Company ("Nationwide") provided the
permanent financing for the shopping center project. This loan was secured by a deed of trust on
the shopping center tract and one of the two leased tracts, designated "tract A." (3) Only tract A is
at issue in this cause. As provided in the Fleetwood deed of trust, Fleetwood expressly
subordinated his lien to Nationwide's deed of trust.

 The closing on the permanent financing triggered a prepayment obligation of Center
Hill on the Fleetwood note. The joint venture could not make the payment. Fleetwood threatened
to call the standby letter of credit and otherwise exercise his rights under the note and deed of
trust if the default were not cured. To cure the default, Center Hill obtained a $1,691,000 loan
from Med Center, evidenced by a promissory note. This debt was secured by a deed of trust on
the shopping center tract and tract A. On May 19, 1986, Center Hill used most of the loan
proceeds to pay off the Fleetwood note. At Med Center's request, Fleetwood executed a full
release of his deed of trust.

 Almost immediately thereafter, Center Hill fell victim to the local real estate bust,
failed to meet its financial obligations, and was forced to declare bankruptcy. In December 1986
or January 1987, after Center Hill defaulted on the Med Center note, Med Center called in the
letter of credit to bring the note current. In January 1988, Med Center foreclosed on tract A by
nonjudicial foreclosure sale. Sometime after the sale, at Med Center's request, Bradshaw and
Looney executed Acknowledgments of Extinguishment of Lease.

 As stated above, Fleetwood initiated this suit seeking a declaration that his
leasehold interest was superior to Med Center's interest obtained at the foreclosure sale and to
recover trespass damages for Med Center's alleged wrongful possession of tract A. Med Center
counterclaimed seeking a contrary result. After we reversed the summary judgment in favor of
Med Center in Fleetwood I, the case proceeded to trial. The case was tried to the court, although,
a jury was impanelled to provide advisory findings. The trial court declared that Fleetwood's
interest was superior and that Fleetwood held 100 percent of the leasehold. The trial court also
awarded Fleetwood trespass damages in the amount of the fair rental value of tract A and
attorney's fees. Med Center appeals.

 DISCUSSION AND HOLDING


 As stated above, only tract A, subject to both Med Center's deed-of-trust lien and
the lease, is at issue in this appeal. Med Center brings eight points of error. Points one through
three complain of the determination that Med Center should not be subrogated to Fleetwood's lien
because subrogation would prejudice Fleetwood's interest in the lease. Point four complains of
the trial court's refusal to submit instructions and questions on Med Center's fraudulent
conveyance counterclaim to the jury. Points five and six complain of the determination that
Fleetwood held 100 percent of the leasehold after the other joint lessors acknowledged the lease
was extinguished. Points seven and eight respectively complain of the award of trespass damages
and attorney's fees to Fleetwood. Before we address these points of error, we discuss three
preliminary matters.


Motion to Dismiss


 Fleetwood has moved for a dismissal of this appeal contending that it is barred by
estoppel. Under the provisions of the lease, Fleetwood, as tenant, was obligated to pay the
property taxes on tract A. He failed to do so during the pendency of the subrogation suit. After
the trial court rendered its judgment that the lease was valid, Med Center demanded from
Fleetwood reimbursement for the property taxes on tract A that Med Center had paid. When
Fleetwood failed to make payment, Med Center gave notice that it had terminated the lease
because of Fleetwood's material breach and filed a separate suit seeking a judgment declaring the
lease terminated.

 Fleetwood argues the Med Center has taken inconsistent positions in the two causes
and has accepted benefits of the judgment in this cause by demanding payment of the taxes and
terminating the lease under its terms. Fleetwood contends that these actions estop Med Center's
right to appeal the judgment in this cause. Fleetwood relies on the decision in Carle 

v. Carle, 234 S.W.2d 1002 (Tex. 1950). (4) See also Empire Gas & Fuel Co. v. Albright, 87
S.W.2d 1092 (Tex. 1935); River & Beach Land Corp. v. O'Donnell, 632 S.W.2d 885 (Tex.
App.--Corpus Christi 1982, no writ). In Carle the court held that "[a] litigant cannot treat a
judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment
he cannot afterward prosecute an appeal therefrom." Carle, 234 S.W.2d at 1004. There are two
exceptions to this rule. First, if a reversal of the judgment on appeal would not affect the party's
right to the benefit received, estoppel does not apply. Id. Second, if the party's retention of
benefits under the judgment was not voluntary, estoppel does not bar an appeal the judgment. Id.

 In its second suit, Med Center seeks only a declaration that it properly terminated
the lease pursuant to its provisions. If successful in its second suit, Med Center would hold tract
A free and clear of the lease. Similarly, if we reverse the judgment in this cause and declare that
Med Center's lien was superior to the lease and the foreclosure extinguished the lease, Med
Center would hold tract A free and clear of the lease. Med Center seeks to reach the same result
by alternative theories. (5) We note that Med Center could have sought these alternative remedies
in a single cause. Tex. R. Civ. P. 47. Although our decision in this cause may moot the
subsequent suit, Med Center's alternative grounds for relief are not fatally inconsistent. Whether
by a foreclosure of a superior lien or by termination for a default, Med Center seeks the same result, avoidance of Fleetwood's lease interest. Accordingly, we conclude that Med
Center's positions in these two causes are not inconsistent. A reversal of the judgment in this
cause would result in the same benefit to Med Center as it seeks in its second suit. Therefore, this
situation lies within the first exception set out in Carle. We overrule Fleetwood's motion to
dismiss.


Priority


 Second, the parties dispute the relative priority of the lease, the Fleetwood deed-of-trust lien, and the Nationwide deed-of-trust lien. In our decision in the previous appeal, we
determined that, under the record summary-judgment proof, the lease was expressly subordinated
to the Fleetwood deed of trust. See Fleetwood I, 786 S.W.2d at 552. While Fleetwood now
asserts the opposite in the preliminary portions of his brief, he does not argue that his lease could
not be wiped out at foreclosure because it was superior to his lien, to which Med Center attempts
to be subrogated, nor does it appear he urged such argument at trial. Fleetwood also alleges that
only his deed of trust and not the lease was expressly subordinated to the Nationwide deed of
trust. This issue was not examined in the previous appeal. Fleetwood asserts that, absent an
express subordination agreement for the lease, the lease retained its first-in-time priority over
Nationwide's lien. However, the lease was expressly subordinated to the Fleetwood deed of trust
which, in turn, was expressly subordinated to the Nationwide deed of trust. We conclude that this
results in the following order of priority as to tract A, as of the closing of the permanent
financing: (1) Nationwide deed-of-trust lien, (2) Fleetwood deed-of-trust lien, and (3) leasehold
interest.


Law of the Case


 Third, we must examine the extent to which our prior opinion controls the
disposition of this appeal under the doctrine of "the law of the case." (6) The law of the case
doctrine is a principle by which the initial determinations of questions of law in a case are held
to govern throughout the subsequent stages of the case. Hudson v. Wakefield, 711 S.W.2d 628,
630 (Tex. 1986); Trevino v. Turcotte, 564 S.W.2d 682, 685 (Tex. 1978); Transport Ins. Co. v.
Employers Casualty Co., 470 S.W.2d 757, 762 (Tex. Civ. App.--Dallas 1971, writ ref'd n.r.e.). 
The doctrine operates to narrow the issues in successive stages of litigation and is supported by
policy goals of uniformity of decisions and judicial economy. Hudson, 711 S.W.2d at 630. The
doctrine applies only to questions of law and not to questions of fact. Id. The doctrine does not
necessarily apply if the issues and facts are not substantially the same in the subsequent trial. Id.;
Transport Ins. Co., 470 S.W.2d at 762. This situation is especially likely if the parties amend
their pleadings after the cause is remanded. Hudson, 711 S.W.2d at 630.

 The application of the law of the case to determinations made in prior appeals from
summary judgments has also been questioned. "Where there has been a reversal of a summary
judgment in favor of a Defendant and then a trial on the merits with an appeal, the law as stated
in the summary judgment [appeal] does not necessarily control the case on the appeal from the
trial on the merits." Allstate Ins. Co. v. Smith, 471 S.W.2d 620, 623 (Tex. Civ. App.--El Paso,
1971 no writ); see also Glenn v. Prestegord, 456 S.W.2d 901, 902 (Tex. 1970). An "appeal after
a full and lengthy trial on the merits with a jury acting as the finder of facts, differs in a very
material sense from the prior limited appeal" from a summary judgment. Governing Bd. v.
Pannill, 659 S.W.2d 670, 681 (Tex. App.--Beaumont 1983, writ ref'd n.r.e.).

 The court in Pannill recognized that the standard of review in an appeal from
summary judgment is very different in that the reviewing court is required to review the evidence
in the light most favorable to the non-movant. Pannill, 659 S.W.2d at 680. In a summary
judgment, the movant also has the burden to show that he is entitled to judgment as a matter of
law. This is a fundamentally different inquiry from that on review after a full trial when the
reviewing court examines whether the party has adduced proof that he is entitled to judgment at
trial. Abalos v. Oil Dev. Co. of Tex., 526 S.W.2d 604, 607-08 (Tex. Civ. App.--Amarillo 1975),
aff'd, 544 S.W.2d 627 (Tex. 1976). Additionally, the case is not likely to be fully developed at
the summary-judgment stage. Pannill, 659 S.W.2d at 680. In a motion for summary judgment,
the movant is not required to assert every theory upon which he may recover or defend; thus,
upon trial on remand, the movant may bring very different theories than those reviewed on a
previous appeal from a summary judgment. Hudson, 711 S.W.2d at 630-31.

 In this case, we issued our prior opinion on review of a summary judgment in favor
of Med Center. In reviewing a summary judgment, we must give the nonmovant every
opportunity to present his case. In the prior appeal, we sought to give Fleetwood every
opportunity to prove an exception to the doctrine of subrogation. We were also strongly
influenced by the equitable nature of legal subrogation and the existence of fact questions as to
the parties' intent. Fleetwood I, 786 S.W.2d at 556-57. The facts and issues of the case were
substantially developed at trial following remand. Under these circumstances, we conclude that
the law of the case should not control the legal issues presented in this appeal. (7)



Subrogation


 The primary issue in this case is whether Med Center is subrogated to the
Fleetwood deed-of-trust lien. It is undisputed that the lease was executed before Med Center's
deed of trust. If a lease is executed before a deed of trust, the lease is superior to the deed-of-trust
lien and not extinguished by foreclosure; the purchaser at the foreclosure sale becomes the new
landlord. United Gen. Ins. Agency v. American Nat'l Ins. Co., 740 S.W.2d 885, 886 (Tex.
App.--El Paso 1987, no writ). Thus, if Med Center was not subrogated to the rights under the
Fleetwood's lien, its deed of trust, which was perfected later in time, is inferior to Fleetwood's
lease interest. However, if Med Center was entitled to be subrogated to the Fleetwood deed of
trust, its lien was superior to the lease, due to the express subordination of the lease to the
Fleetwood deed of trust, and its subsequent foreclosure extinguished the lease.

 In Fleetwood I, we set out the general principles of subrogation as follows:



Subrogation is a doctrine of equity, and is the substitution of another person in the
place of a creditor, so that the person in whose favor it is applied succeeds to the
rights of the creditor in relation to the debt. . . .


There are two kinds of subrogation: "legal," which arises by operation of law, and
"conventional," which arises by agreement of the parties. Legal subrogation is
always controlled by principles of equity.


Subrogation has been recognized as an important doctrine and has traditionally
received favorable treatment in Texas. One of the three commonly recognized
situations in which subrogation arises in mortgage law is when a lender or other
third party advances money to pay off a prior lien on property. Texas courts have
long held that


[o]ne who advances money to pay off an incumbrance on realty at the
instance of either the owner of the property or the holder of the
incumbrance, either on the express understanding, or under circumstances
from which an understanding will be implied, that the advance made is to
be secured by a first lien on the property, is not a mere volunteer, and,
in the event the new security is for any reason not a first lien on the
property, the holder of such security . . . will be subrogated to the rights
of the prior incumbrance under the security held by him, unless the
superior or equal equities of others will be prejudiced thereby. . . .


However, courts have generally recognized the importance of the limitation
contained in the last clause of the above quotation: "unless the superior or equal
equities of others would be prejudiced thereby." 



Fleetwood I, 786 S.W.2d at 553-554 (citations omitted).

 Med Center's first three points of error complain that the trial court erred in
rendering judgment for Fleetwood on the subrogation issue because: (1) Med Center was entitled
to subrogation as a matter of law and no Texas authority exists to support an exception to
subrogation on these facts; (2) the great weight and preponderance of the evidence and equities
favored subrogating Med Center to Fleetwood's lien; and (3) there was no evidence or insufficient
evidence to support applying the exception to subrogation in this case. 

 In Fleetwood I, we determined "that Fleetwood's ownership of that senior deed-of-trust lien provided some degree of protection for his leasehold interest" in that "[a]s long as he
owned that senior lien, he had several options to exercise in the event of a default" and "[w]ith
the deed-of-trust lien in the hands of a third party, however, that advantage would be lost." 
Fleetwood I, 788 S.W.2d at 555. We held that this loss of protection was a "cognizable
prejudice" to Fleetwood as a holder of an intervening interest, i.e., the leasehold. Fleetwood I,
788 S.W.2d at 556. Based in part on this possibility of prejudice, we determined that Med Center
was not entitled to summary judgment as a matter of law. (8) Id. We did not determine whether a
sufficient prejudice to Fleetwood as a leaseholder did in fact exist so as to prevent subrogation,
but remanded the cause for this determination.

 Initially, we note that Fleetwood occupies two distinct positions as to tract A: (1)
a creditor with a security interest in tract A and (2) a joint lessee of the tract. If two different
individuals occupied these positions, subrogation would be available for a party paying off the
debt to the creditor, and a foreclosure of any lien superior to the lease would extinguish any
interest under the lease. Dillon v. Kauffman & Runge, 58 Tex. 696, 706 (1883); United Gen. Ins.
Agency v. American Nat'l Ins. Co., 740 S.W.2d at 886. When the debt was paid in full,
Fleetwood's status as a lienholder was eliminated. Therefore, any prejudice to Fleetwood as a
result of the subrogation could be only to his lease interest. 

 The determination of whether subrogation prejudices intervening interests is made
as of the time of the transaction supporting subrogation, in this case, the payoff of the debt and
the release of Fleetwood's lien. The consequences of subsequent transactions or events, such as
the foreclosure in this case, are not relevant to this inquiry. Fleetwood asserts that his interest
in the lease was prejudiced because the substitution of Med Center by subrogation would eliminate
his discretion whether to forego foreclosure of the superior lien in the event of default. This does
not appear to be the type of loss of a "legal right" or a "vested interest" courts of other
jurisdictions have found to be prejudicial. See Boley v. Daniel, 72 So. 644 (Fla. 1916); Rice v.
Winters, 63 N.W. 830 (Neb. 1895). In this case, subrogation would result in a change of the
entity with the discretion to enforce the terms of the lien; no change in those terms or the amount
of the debt superior to the lease would result. We believe that Fleetwood's discretion to exercise
less than the full extent of his legal rights under his lien is not in itself a legal or vested right. 
Taken to the extreme, Fleetwood's argument could support a determination that the mere change
of the entity holding the superior right results in a change of the potential enforcement of its
terms. The subrogation of a lender with strict collection policies to the priority of a lender with
policies favoring loan workouts would be prejudicial to intervening interest holders. Under such
a holding, the exception to subrogation would swallow the rule.

 The exception language has been often cited as part of the general principles of
subrogation, but rarely applied. In Fievel v. Zuber, 3 S.W. 273, 275 (Tex. 1887), the court stated
that subrogation "cannot be done as to a part of the debt, or in any manner to affect the rights of
the creditor to his prejudice."  The court went on to state that "there are numerous decisions
which recognize the doctrine that, if a third party pay[s] the entire debt in pursuance of an
agreement between him and the debtor . . . he shall be subrogated to the creditor's rights. Id. at
275. Fievel involved a full payment of the debt; the court found no prejudice to the creditor, and
applied the general rule allowing subrogation. In the case from which we quoted the exception
language, "unless the superior or equal equities of others would be prejudiced thereby," there was
a full payment of the debt and the court allowed subrogation. See Sanger Bros. v. Ely & Walker
Dry Goods Co., 207 S.W. 348, 349 (Tex. Civ. App.--Fort Worth 1918, writ ref'd).

 The Texas cases applying or discussing the exception to subrogation have all
involved only a "partial payment" of the outstanding debt. See Providence Inst. for Sav. v. Sims,
441 S.W.2d 516, 519 (Tex. 1969); Cason v. Westfall, 18 S.W. 668, 670 (Tex. 1892); Texas &
S. L. R.R. Co. v. McCaughey, 62 Tex. 271, 273-74 (1884); Foos Gas Engine Co. v. Fairview
Land & Cattle Co., 185 S.W. 382, 386 (Tex. Civ. App.--Amarillo 1916, writ ref'd); Slaughter
v. Boyce, 170 S.W. 259, 261 (Tex. Civ. App.--Amarillo 1914, writ ref'd); Rickers v. Alliance Life
Ins. Co., 135 S.W.2d 725, 735 (Tex. Civ. App.--Amarillo 1939, writ dism'd judgm't cor.);
Fidelity & Deposit Co. of Md. v. Farmers & Merchants Nat'l Bank of Nacona, 121 S.W.2d 503,
506 (Tex. Civ. App.--Fort Worth 1938, writ dism'd); Sherman v. El Paso Nat'l Bank, 100 S.W.2d
402, 409 (Tex. Civ. App.--El Paso 1936, writ dism'd); Kone v. Harper, 297 S.W. 294, 298 (Tex.
Civ. App.--Waco 1927), aff'd sub nom. Ward-Harrison Co. v. Kone, 1 S.W.2d 857 (Tex. 1928);
Askey v. Stroud, 240 S.W. 339, 391 (Tex. Civ. App.--Fort Worth 1922, no writ). In a partial-payment situation, the prior creditor is prejudiced by a subsequent creditor assuming a position
equal or superior to the lien securing the remaining debt to the prior creditor. Providence Inst.,
441 S.W.2d at 519; see also Kone, 297 S.W.2d at 298; Askey, 240 S.W. at 341. However, in
a full-payment situation, the creditor is not prejudiced in this manner. Rickets, 135 S.W.2d at
735. In the immediate case, it is undisputed that the Med Center loan proceeds paid the entirety
of the debt to Fleetwood.

 We believe that absent a showing that subrogation results in additional debt having
priority over or parity with the intervening interest, a material change in the terms of the superior
interest, or other pecuniary loss resulting from the subrogation, there is no prejudice to
intervening interest holders.

 Additionally, allowing Fleetwood to prevent a subrogation to his lien would violate
the policy favoring debtor refinancing of debts and the policy against "clogging" the equitable
right of redemption of debts. See Peugh v. Davis, 96 U.S. 332, 337 (1877); Laird v. Weis, 23
S.W. 864, 865 (Tex. 1892). No matter how carefully the lease transaction was crafted to insure
its priority, it would nonetheless hinder Bradshaw and Looney from refinancing their debt to
Fleetwood if the lender would not succeed to the same lien Fleetwood enjoyed before his debt was
paid in full. In Fears v. Albea, 6 S.W. 286, 289 (Tex. 1887), the court stated, "Every man . .
. has the right to dispose of his property . . . and any rule that would prevent or clog the
alienation of incumbered property . . . would be very prejudicial to the debtor." The court went
on to discuss equitable subrogation of a lender providing funds to pay off the incumbrance as the
appropriate solution. Id. at 289. There is a strong policy in favor of allowing debtors to
refinance their debts; subrogation gives lenders an incentive to make these loans. See Fievel, 3
S.W. at 275-76.

 Fleetwood's argument lacks credibility because he asserts that he was prejudiced
by the removal of his discretion to forego the foreclosure of his lien after he had threatened to
fully exercise his right of foreclosure. It seems unlikely that Fleetwood would, in fact, have
exercised any less than his full rights under his lien to collect the debt if he had not been paid in
full by the Med Center loan. By fully exercising his rights, he could have foreclosed on the entire
24-acre tract, extinguished Bradshaw's and Looney's interests in the leasehold, and then pursued
any deficiency against the standby letter of credit and against Bradshaw and Looney individually. 
The only advantage to Fleetwood in foregoing foreclosure would be the continued existence of
the lease. This advantage pales when compared with the prospect of obtaining the full tract
subject only to the Nationwide lien.

 Fleetwood asserts that it was his intention to "carefully craft" the transaction so as
to prevent any lien other than his own from enjoying priority over the lease. The intention of the
intervening interest holder should not enter into the subrogation determination. Certainly every
interest holder would wish to maintain the highest priority. Fleetwood's contrary intention should
not operate to deny his debtor the opportunity to refinance the debt. Such a result would be
inequitable. See Fears, 6 S.W. at 289; Fievel, 3 S.W. at 275-76. Additionally, the lease was
always subject to extinguishment by foreclosure of the Nationwide lien, to which all of
Fleetwood's interests were expressly subordinated. Thus, Fleetwood never had complete control
over the fate of the lease.

 Where there is an express provision in the deed of trust between the debtor and the
lender stating that the proceeds are to be used to pay off the prior debt and that the lender will be
subrogated to all rights of the prior lien, the right of subrogation is not wholly dependent on
equitable principles. Providence Inst., 411 S.W.2d at 519-20; Texas Commerce Bank Nat'l Ass'n.
v. Liberty Bank, 540 S.W.2d 554, 557 (Tex. Civ. App.--Houston [14th Dist.] 1976, no writ). In
the immediate case, Med Center's deed of trust contained such a provision.

 Fleetwood asserts that his execution of a full release of his lien rather than a
transfer or assignment to Med Center indicates negligence on Med Center's part and prevents
subrogation. The lender's right to subrogation is not affected if, upon the payment of the prior
debt, the lender obtains a release of the prior lien rather than an assignment. Providence Inst.,
441 S.W.2d at 520; Texas Commerce Bank, 540 S.W.2d at 557; Glasscock v. Travelers Ins. Co.,
113 S.W.2d 1005 (Tex. Civ. App.--Austin 1938, writ ref'd). The lender's actual or constructive
knowledge of the prior lien or negligence in attempting to achieve priority does not bar its right
to subrogation. Providence Inst., 441 S.W.2d at 519; Texas Commerce Bank, 540 S.W.2d 557;
Sanger Bros., 207 S.W. at 349-350.

 In summary, we conclude that a lender extending funds to pay off a debt has a right
to be subrogated to the lien securing that debt, except in cases where an intervening interest is
prejudiced. We hold that the exception does not apply in the immediate situation, as it is
undisputed that the funds Med Center extended completely satisfied the debt to Fleetwood. 
Fleetwood has shown no pecuniary loss to his lease interest directly resulting from the
subrogation.

 Accordingly, we conclude that as a matter of law Med Center is subrogated to the
rights under the Fleetwood deed of trust and that the foreclosure extinguished the lease. We
sustain Med Center's first point of error and need not reach its second and third points of error.



Fraudulent-Conveyance Submission


 Med Center's fourth point of error complains that the trial court erred in refusing
to submit jury questions and instructions on its claim that the lease constituted a fraudulent
conveyance. Med Center has acknowledged that this cause was tried to the court with a jury
empaneled only to render advisory findings. Under these circumstances, we conclude it is not
error for the trial court not to request advisory findings on every issue before it. Having
determined that Med Center was subrogated to Fleetwood's lien rights and that the foreclosure
extinguished the lease, however, we need not resolve this point to dispose of this appeal.


Leasehold Abandonment


 In its fifth and sixth points of error, Med Center complains that the trial court erred
in its determination that Fleetwood held 100 percent of the leasehold because (1) Bradshaw and
Looney had acknowledged that their interest passed to Med Center, and (2) Fleetwood failed to
request a jury finding on abandonment, and there was no evidence to support a finding of
abandonment. Having determined that Med Center is subrogated to Fleetwood's lien rights and
that the foreclosure extinguished the lease, we do not reach Med Center's fifth and sixth points
of error.



Trespass Damages


 In its seventh point of error, Med Center complains that the trial court erred in
awarding Fleetwood trespass damages because (1) Fleetwood's lease was extinguished by the
foreclosure, and (2) Fleetwood only held a 55 percent interest in the leasehold and was entitled
to only 55 percent of the fair rental value. Having determined that Med Center is subrogated to
the rights under Fleetwood's lien and that the foreclosure extinguished the lease, we sustain Med
Center's seventh point of error.




Attorney's Fees


 In its eighth point of error, Med Center complains of the award of and the amount
of attorney's fees. Having otherwise held in favor of Med Center, we sustain this point of error.



CONCLUSION


 We reverse the trial-court judgment and render judgment that Fleetwood take
nothing by his claims for damages and attorney's fees; we declare that Med Center is subrogated
to all rights under the Fleetwood lien and that the foreclosure of Med Center's lien extinguished
Fleetwood's interest in tract A under the lease.



 

 Jimmy Carroll, Chief Justice

[Before Chief Justice Carroll, Justices Aboussie* and Jones]

Reversed and Rendered 

Filed: May 19, 1993

[Publish]













[* Justice Marilyn Aboussie sitting pursuant to Tex. R. App. P. 79(b)].
1.   Looney and Bradshaw each individually held an undivided 22.5 percent interest of
the lease; the divisions reflected the parties' previous ownership percentages in the joint
venture.
2.   The parties desired to divide the undeveloped portions of the 24-acre tract among
themselves free and clear of the financing. However, they were prevented from
subdividing the 24-acre tract by zoning restrictions. Instead they took proportionate
shares of a 99-year ground lease of the undeveloped portions with an option to purchase
these tracts at a nominal price when zoning laws changed to allow subdivision. The intent
of the parties was to make the transaction as close as possible to an outright division of
these tracts.
3.   This is the designation given the tract by the parties in their trial presentation and in
argument before this Court. The other leased tract was designated "tract B."
4. Generally, Carle and other cases applying the rule have involved situations where the
appellant brings an appeal after he has received satisfaction on the judgment, attempted to
enforce the judgment, or accepted a transfer of property pursuant to the judgment. See, e.g.,
id. at 1003; Smith v. Texas Commerce Bank, 822 S.W.2d 812, 813 (Tex. App.--Corpus Christi
1992, writ denied); River & Beach Land Corp. v. O'Donnell, 632 S.W.2d 885, 889 (Tex.
App.--Corpus Christi 1982, no writ); Latimer v. State, 328 S.W.2d 242 (Tex. Civ.
App.--Beaumont 1959, writ ref'd n.r.e.); Gaulding v. Gaulding, 256 S.W.2d 684 (Tex. Civ.
App.--Dallas 1953, no writ). In this cause, the "benefit" of the judgment Med Center allegedly
accepted is the declaration that the lease was valid and superior to Med Center's interest. In
the subsequent suit, Med Center is seeking a declaration that the lease was validly terminated. 
We are not aware of any case applying Carle to bar an appeal of a declaratory judgment
because of a separate suit seeking a declaration necessarily based on an alternative factual
position. The issue of the relative priority of the lease and Med Center's lien is distinct from
the issue whether Med Center had the right to terminate the lease for Fleetwood's breach. See
Caranas v. Jones, 437 S.W.2d 905, 910-11 (Tex. Civ. App.--Dallas 1969, writ ref'd n.r.e.)
(appellant-landlord's receipt of ad valorem taxes recovered in judgment did not bar appeal of
portion of judgment declaring lease not forfeited for failure to pay the taxes).
5. Whether a declaration of termination of the lease should have been sought in this
cause as alternative relief and whether the claim for such a declaration is barred by res
judicata or waiver are not issues we may consider in this cause.
6. Application of the law of the case "is flexible and must be left to the discretion of the
court and determined according to the particular circumstances of the case." Kay v.
Sandler, 704 S.W.2d 430, 433 (Tex. App.--Houston [14th Dist.] 1985, writ ref'd n.r.e.); see
Trevino, 564 S.W.2d at 685. The decision whether "a prior decision in the same case will be
reopened is a matter within the discretion of the appellate court." Roberts v. Armstrong, 231
S.W. 371 (Tex. 1921); Houston Endowment, Inc. v. City of Houston, 468 S.W.2d 540, 543
(Tex. Civ. App.--Houston [14th Dist.] 1971, writ ref'd n.r.e.). An appellate court may
consider all issues properly before it, and make such rulings as it deems proper under the
record in the case, irrespective of a prior opinion. Green v. Priddy, 250 S.W. 656, 660 (Tex.
1923); Kempner v. Huddleston, 37 S.W. 1066 (Tex. 1896).
7. The doctrine has also been held not to apply when the Texas Supreme Court either
refused the application for writ of error from the prior appeal for "want of jurisdiction"
or for "no reversible error." Trevino, 564 S.W.2d at 685; Fant v. Howell, 547 S.W.2d 261,
264 (Tex. 1977); Burchfield v. Markham, 294 S.W.2d 795, 798 (Tex. 1956). We are aware
of no case expressly ruling on the application of the law of the case to a writ denied decision. 
However, several courts have applied the doctrine to writ denied cases without discussion of
the writ history issue. See Berryman v. El Paso Natural Gas Co., 836 S.W.2d 610 (Tex.
App.--Corpus Christi 1992, n.w.h.); Texas Employers' Ins. Ass'n, 834 S.W.2d at 395; Hurd
Enters., Ltd. v. Bruni, 828 S.W.2d 101 (Tex. App.--San Antonio 1992, writ denied); Dieter v.
Baker Serv. Tools, 776 S.W.2d 781 (Tex. App.--Corpus Christi 1989, writ denied). The
supreme court's writ denied ruling does not indicate approval of any portion of the court of
appeals' opinion. Tex. R. App. P. 133(a); Matthews Const. Co., Inc. v. Rosen, 796 S.W.2d
692, 694 n. 2 (Tex. 1990).
8.   As additional grounds for reversal of the summary judgment we found that (1) fact
issues existed as to the intent of the parties and (2) equitable issues are rarely appropriate
for summary judgment. Fleetwood I, 788 S.W.2d at 556-57.